## SCHUMACHER v. UNITED STATES.
### No. M–26.

Court of Claims.
Feb. 8, 1932.

Joseph J. Klein, of Cleveland, Ohio (Myron A. Finke, of New York City, on the brief), for plaintiff.

R. C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (Bradley B. Gilman, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiff in this case seeks to recover $25,000, with interest thereon, an alleged overpayment of his income taxes for the calendar year 1925.

The sole issue in the case is whether an amount of $100,000 received by the plaintiff from the stockholder's committee of the El Paso & Southwestern Company in January, 1925, was income derived from compensation for personal services within the meaning of section 213 (a) of the Revenue Act of 1924 (26 USCA § 954 (a), or was a gift within the meaning of section 213 (b) (3) of said act (26 USCA § 954 (b) (3) and note).

■ The rule is that whether a payment is taxable compensation or a gift exempt from tax depends upon the intention of the parties and the facts and circumstances surrounding the transaction. The facts have been stipulated and briefly stated are:

Prior to October 31, 1924, the plaintiff was president of the El Paso & Southwestern Railroad Company, the stock of which company was owned by the El Paso & Southwestern Company, a holding corporation.

On November 1, 1924, the El Paso & Southwestern Company transferred the capital stock of the El Paso & Southwestern Railroad Company to the Southern Pacific Company and received in exchange therefor certain securities of that company. Upon the transfer of the El Paso & Southwestern Railroad Company to the Southern Pacific Company the plaintiff's employment by the former company was terminated and he performed no further service for that company thereafter. The plaintiff was paid in full the salary due him as an employee of the El Paso & Southwestern Railroad Company up to the conclusion of his employment.

On November 10, 1924, the secretary of the El Paso & Southwestern Company addressed a letter to the stockholders of the holding company explaining in detail the plan of reorganization whereby the stock of the El Paso & Southwestern Railroad Company was transferred to the Southern Pacific Company and asking on behalf of the directors of the El Paso & Southwestern Company full approval, ratification, and confirmation of the plan and all the acts of the directors in carrying out the same. This let-

ter contained the following statement: "The directors of the El Paso and Southwestern Company request that the stockholders of the company authorize them, in recognition of the long and faithful services of the officers and employees of the railroad, to pay the officers and employees, to be designated by the board of directors, additional compensation to be decided by the board of directors, and that they be authorized to set aside for such compensation a sum not to exceed $1,000,000.00."

The secretary inclosed in this communication a letter which the stockholders were requested to sign and return to him. In this letter appears the following statement:

"As a stockholder of the El Paso & Southwestern Company, I hereby ratify, approve, and confirm the plan of reorganization and the actions of the board of directors and the officers, as set forth in said plan of reorganization, and the documents accompanying your letter.

"I understand that there are certain unsettled expenses, obligations to the Southern Pacific Company, bonuses to the employees, agreed upon by the board of directors, estimated at about $1,000,000.00, and other debts, expenses, and liabilities incidental to the plan of reorganization and otherwise."

The stockholders approved the plan of reorganization and confirmed and ratified the action of the board of directors as set out in the letter of the secretary of the company. They also appointed five of their number as a committee "to pay the expenses, to compensate employees, to adjust and settle the accounts, to discharge and provide for the debts and liabilities of the company and generally to do every act and thing necessary or proper in pursuance of the provisions of the plan of reorganization * * *."

This stockholders' committee, on December 23, 1924, took the following action:

"Upon motion duly seconded and carried, the secretary was authorized to release the checks in payment of certain bonuses to amount of $893,690.00 as per memo on file.

"Resolved: That the officers be authorized to secure a loan of $1,000,000.00 from the Hanover National Bank."

Out of the $893,690 paid as bonuses to certain former officers and employees of the El Paso & Southwestern Railroad Company, the plaintiff on January 2, 1925, received the $100,000 payment involved in suit.

Under the facts and circumstances shown we are clearly of the opinion this payment was not intended to be, and was not, a gift. The language employed by the secretary of the company in his letter to the stockholders "to pay to officers and employees, to be designated by the board of directors, additional compensation," negatives the contention a gift was being contemplated, as does the letter signed by the stockholders authorizing the payment "to compensate employees." That the stockholders did not understand a gift was being made to plaintiff and other employees is evident from the statement, "I understand that there are certain * * * bonuses to the employees, agreed upon by the board. of directors, estimated at about $1,000,000 * * *." That the payment was not intended as a gift is further evidenced, and, we think, conclusively so, by ·the language of the resolution adopted by the stockholder's committee at the time the checks were released—"the secretary was authorized to release the checks in payment of certain bonuses."

The plaintiff suggests the use of the words "compensate employees" and "additional compensation," in the secretary's letter, "merely emphasizes that inartistic and unintentionally misleading language was employed to describe what was intended to be, and what actually were, gifts." We do not agree with plaintiff that these expressions are inartistic, or that they are misleading. The words "compensate employees," "additional compensation," and "bonus" have a precise and well-understood meaning, and in the absence of any fact or circumstance showing they were not used in their ordinary sense they must be accorded their usual signification. It is significant of the intention of the parties that the word "gift" nowhere appears in the entire transaction. When the payments are referred to, they are invariably designated as "additional compensation," "compensate employees," or "bonus," indicating beyond question that the payments were not gifts or gratuities.

It is an essential characteristic of a gift that it be a transfer without consideration. If there is a consideration for the transaction, it is not a gift. 28 C. J. 621. In this case there was a consideration for the payment made to plaintiff. It is stated in the resolutions of the board of directors, and in the letter of the secretary of the company to the stockholders, "in recognition of the long and faithful services of the officers and employees of the railroad." The payment was made to the plaintiff as additional compensation in consideration of former services rendered the railroad company and not as a gift or gratuity. Appeal of Parrott, 1 B. T. A. 1; Mount v. Commissioner, 10 B. T. A. 1156; Garey v. Commissioner, 16 B. T. A. 274; Binger v. Commissioner, 22 B. T. A. 111; Noel v. Parrott (C. C. A.) 15 F.(2d) 669.

We hold, therefore, that the payment of $100,000 to the plaintiff on January 2, 1925, by the stockholder's committee was intended to be, and was, additional compensation for services rendered and is subject to the tax under section 213 (a) of the Revenue Act of 1924, 26 USCA § 954 (a), which reads:

"Sec. 213. For the purposes of this title, except as otherwise provided in section 233—

"(a) The term 'gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid * * *."

It is immaterial that the payment received by the plaintiff was made by the holding company rather than by the company for which he had rendered services. The entire capital stock of the railroad company was owned by the holding company. The economic interests of the two companies were identical. The purchase price received from the sale of the railroad company went to the holding company. That the money received by the plaintiff was not paid directly by the railroad company but was paid by the stockholder's committee of the holding company does not change the essential character of the transaction, and make a gift out of what was intended to be, and in fact was, additional compensation for services rendered.

The petition is dismissed. It is so ordered.

BOOTH, Chief Justice, and LITTLETON and GREEN, Judges, concur.

WHALEY, Judge, took no part in the decision of this case on account of illness.