## BASS v. HAWLEY.
### No. 6589.
Circuit Court of Appeals, Fifth Circuit.
Jan. 12, 1933.

John D. Hartman, U. S. Atty., of San Antonio, Tex., and Wright Matthews, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for appellant.

Paul D. Thomas, of El Paso, Tex., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

James W. Bass, collector of internal revenue, appeals from the judgment on a verdict directed against him in favor of A. L. Hawley for recovery of an income tax for the year 1925. The question is whether $16,250

received by Hawley that year was a gift or additional compensation for services. Hawley had for twenty-two years been the general auditor of the El Paso & Southwestern Railroad Company, all the stock of which was owned by El Paso & Southwestern Company. The latter had no active business, and was a mere holding company. We will call the former the Railroad Company, the latter the Holding Company. Negotiations beginning in the spring of 1924 culminated in the sale by the Holding Company of all the stock of the Railroad Company to the Southern Pacific Company. The railroad and its business were turned over to the purchaser on October 31, 1924, but the sale was as of May 1, 1924, and an accounting was to be had of operations meanwhile in which it was expected that the Holding Company would be found owing the Southern Pacific Company a substantial sum. The consideration of the sale was $28,000,000 of stock and $29,500,000 of bonds of the purchasing company, to be issued directly to the stockholders of the Holding Company. The Holding Company had no other assets, and since its liabilities remained to be settled, the bonds were deposited in a bank for the stockholders. The stockholders thus became stockholders in the Southern Pacific Company, and thereby retained an interest in the Railroad Company. On November 10, 1924, the directors of the Holding Company sent to each of its stockholders what was called a "Statement of Plan of Reorganization." It reviewed in detail the transactions above outlined, and referring to the possible debt to the Southern Pacific Company continued: "In addition to this sum the directors request that the stockholders of the Company authorize them *in recognition of the long and faithful service* of the officers and employees of the Railroad to pay to officers and employees to be designated by the directors *additional compensation* to be decided by the directors, and that they be authorized to set aside for *such compensation* a sum not to exceed $1,000,000.00," retaining to meet this and all liabilities of the Holding Company and expenses of the reorganization so much of the deposited bonds as might seem necessary. The appointment of a committee to finally dispose of the bonds was suggested. Each stockholder signed a reply, stating that he understood about the unsettled liabilities, expenses, and "bonuses to employes," and appointed a committee of five "to pay the expenses, *compensate employes,* to adjust and settle the accounts, etc.," *charging it all* against the deposited bonds. The committee set aside $1,500,000 of the bonds, borrowed

money on them which was later repaid by a sale of the bonds, and on December 22d paid out according to their account "bonus $619,-940.00," and on January 2d "bonus $273,-750.00." There is testimony that some of the larger payments were divided so as to prevent the recipient getting it all in the same taxable year. The committee reported to the stockholders on February 24, 1923, their progress in meeting the "unsettled expenses, obligations to Southern Pacific Company, *bonuses to employes,* etc." The committee's report and statement of January 6, 1927, showed as paid out *"compensation* 1924, $619,940.00; 1925, $280,450.00; total $900,-390.00." The payments were made only to old employees who were not members of any union, but there was no set formula, the representatives of the committee giving attention also to the financial and family condition of the employee. Each check was accompanied by a card, "With *appreciation* and best wishes of El Paso & Southwestern Company from Committee appointed Nov. 18, 1924." Hawley received $32,500, half of which went into his own and half into his wife's income tax return. He protested the tax on this item, and on payment asked for a refund, referring to it in his claim always as a *bonus.*

[1] The Board of Tax Appeals and the Court of Claims have reached opposite conclusions as to the taxability of this distribution. Barnes v. Commissioner, 17 B. T. A. 1002; Schumacher v. United States (Ct. Cl.) 55 F.(2d) 1007. Hawley relies strongly on Jones v. Commissioner (C. C. A.) 31 F.(2d) 755, and Blair, Commissioner, v. Rosseter (C. C. A.) 33 F.(2d) 286. Each of these cases in holding payments to employees to be nontaxable gifts relies on the fact that there was no obligation to pay and the payments were over and above the wages and salaries due. The controlling importance of that fact has since been denied by the Supreme Court in Old Colony Trust Co. v. Commissioner, 279 U. S. at page 730, 49 S. Ct. 499, 504, 73 L. Ed. 918, where the question was whether the litigant owed a tax, saying: "The payment for services, even though entirely voluntary, was nevertheless compensation within the statute." Again in Lucas, Commissioner, v. Ox Fibre Brush Co., 281 U. S. 115, 50 S. Ct. 273, 74 L. Ed. 733, where the question was whether the litigant could deduct the payment as an expense of business, a like result was reached. Noel v. Parrott (C. C. A.) 15 F.(2d) 669, was approved. In Fisher v. Commissioner (C. C. A.) 59 F.(2d) 192, it was ruled that absence of legal duty to pay is not conclusive of a gift. Whether a pay-

ment in a given case shall be deemed taxable compensation or a gift exempt from tax depends on the intention of the parties and particularly that of the payer, to be determined from the attending facts and circumstances.

 Income that may be taxed includes gain derived from labor. Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. One who in the peace and under the protection of the United States gainfully exercises his faculties of mind or body may be called on to share the gain with the public treasury. Section 213 of the Revenue Act of 1926 (26 USCA § 954) here applicable includes in gross income to be taxed "gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid." It excludes property acquired by "gift, bequest, devise or inheritance." The intent is that all receipts in whatever form that come because of labor and service, whether payment could be compelled or not, shall be taxed as arising from labor. That only is a gift which is purely such, not intended as a return of value or made because of any intent to repay another what is his due, but bestowed only because of personal affection or regard or pity, or from general motives of philanthropy or charity. Those payments made because of past services, but over and above what was contracted and compellable to be paid, have been called additional compensation and bonuses, and are taxable income to the recipient. From the standpoint of the payer also they are recognized as disbursements for wages or salaries, and when paid in the conduct of a regular business may be deducted as an expense thereof. See Regulation 69, art. 108. The meaning in this connection of additional compensation as a payment for services above what is demandable is clear. Bonus has a parallel meaning: "Something given in addition to what is ordinarily received by or strictly due to the recipient; money given in addition to an agreed compensation." Webster's International Dictionary. Bearing in mind the proper meaning of these terms in looking at the documents that attended these payments we are at once impressed that in no case were they called gifts, but in every instance compensation, additional compensation or bonuses to employees was the term used. Even the card which accompanied each says, "In appreciation," which connotes that something has been appraised and its value is acknowledged. The payments were made to none but old employees. They were confined to nonunion men, which suggests some

recognition of loyalty in labor disputes. There is no evidence of personal relationships leading to personal gifts. Where financial and family conditions were considered there may have been added a minor element of charity, but this does not appear to have influenced the payment of $32,500 to Hawley. We think it plain that this sum was a bonus paid him in recognition of long and faithful service.

 Against this conclusion is put forward the fact that neither the Holding Company nor the committee claimed a deduction for the payment in their tax returns. It is true that a payment which is a gift as respects the payer, and so not deductible, will likely be a gift in the hands of the recipient and not taxable, but it is not true that because a payment may not have been taken as a deduction by the payer that it cannot be taxed as income to the recipient. The former may have overlooked or waived his right to deduct, which would not relieve the latter from his duty to pay taxes. Or it may happen that the payer was not, when the obligation was assumed and the payment made, engaged in business and so not within the statute allowing the deduction. This seems probable in this case.

 Again it is objected that the employer was not the Holding Company or its stockholders, but was the Railroad Company, and that the Railroad Company alone could make additional compensation; that a voluntary payment by any one else is necessarily a gift. The objection would have force where the third person had no interest in the employment and no cause to feel obligated to compensate the service. But in this case although the stockholders authorized the payment, it was made out of funds really belonging to the Holding Company as the proceeds of the sale of its assets, and the Holding Company was the sole owner of the Railroad Company. If the additional compensation was fairly due, and should have been paid out of the Railroad Company's assets, it would have come to the same thing in settling with the Southern Pacific Company. The situation produced by the sale made it inevitable that whatever was paid should eventually be the loss of the stockholders. In determining the incidence of taxation, corporate organization of taxpayers is not ordinarily to be disregarded. Burnet, Commissioner, v. Commonwealth Improvement Co., 53 S. Ct. 198, 77 L. Ed. ——; Burnet, Commissioner, v. Clark, 53 S. Ct. 207, 77 L. Ed. ——, decided December 12, 1932; Planters' Cotton Oil Co. v. Hopkins, Collector (C. C. A.) 53 F.(2d)

825. But in a case like this where neither corporation nor stockholder is the taxpayer, and motive and intent is the question, the substance of the matter should be looked to. The evidence does not require a finding that the payment to Hawley was a gift, and the court erred in so instructing the jury.

The claim for refund set up that the payment was made by the Holding Company. The amended pleadings and the evidence showed an involvement of its stockholders. The point is made that there was a departure from the case made by the claim for refund. J. P. Stevens Engraving Co. v. United States (C. C. A.) 53 F.(2d) 1; Snead, Collector, v. Elmore (C. C. A.) 59 F.(2d) 312. The difference is but a detail, not going to the substance of the controversy and not calculated to occasion a surprise. There was no forbidden departure.

The cause is reversed, and remanded for further proceedings not inconsistent with this opinion.