**WALKER et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 3197.**

Circuit Court of Appeals, First Circuit.

Feb. 12, 1937.

Rehearing Denied March 24, 1937.

William D. Whitney, of New York City (Richard H. Wilmer, of Washington, D. C., and George G. Tyler and Cravath, de Gersdorff, Swaine & Wood, all of New York City, on the brief), for petitioners for review.

John G. Remey, Sp. Asst. to the Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and John J. Pringle, Jr., Sp. Assts. to the Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is a review of the decision of the Board of Tax Appeals holding there is due from the estate of William H. Walker, who resided at the time of his death at Bridgton, Me., a deficiency tax of $242.69 for the calendar year 1931, under and by virtue of the provisions of the Revenue Act of 1928 (45 Stat. 798, § 22 [26 U.S.C.A. § 22 and note]). The only question raised for consideration is whether the Board erred in determining that the sum of $10,-000 received by William H. Walker in 1931 was compensation for services and not a gift.

The salient facts are that the Universal Oil Products Company was organized in South Dakota in 1914, having as its only asset an application for a patent on a process for refining petroleum and manufacturing gasoline, and since that time has been engaged in the business of developing that and other patents subsequently acquired and licensing them to various producers on a royalty basis; that it was so remarkably prosperous that the stockholders, after taking $4,100,000 from the liquid assets of the company, were able to sell their stock to a corporation known as United Gasoline Corporation for $25,000,000; that prior to this sale the stockholders of Universal organized another corporation known as the Unopco Corporation, to which was transferred the $4,100,00 above referred to, all the stockholders of Universal becoming stockholders of Unopco with the same proportionate holdings, and it was provided in the sale agreement of the Universal stock that a part of the proceeds of the sale and a certain amount of the assets transferred to Unopco should be held as a "guarantee fund" for payment of Universal's unsettled liabilities; that on January 9, 1931, after the sale, the board of directors of Unopco recommended to its stockholders that $607,500 "be appropriated, paid and distributed as a bonus to sixty-four (64) former and present employees, attorneys and experts of Universal Oil Products Company, * * * in recognition of the valuable and loyal services of said employees, attorneys and experts to said Universal Oil Products Company" the same to be distributed as the board of directors shall determine; that on the next day, January 10, 1931, the stockholders of Unopco met, and, following the above recommendation, passed a vote authorizing the distribution, using therein the same terms as above quoted; and by virtue of this authority the directors distributed the money to the 64 employees, attorneys, and experts, paying to Mr. Walker, who had been called in from time to time in consultation and who had given testimony in cases relative to patent infringements, the sum of $10,000.

It was in evidence that, prior to the passage of the vote, Mr. H. J. Halle, president of Unopco, had suggested to its stockholders that it "would be a nice and generous thing for us to show our appreciation and to remember them [a number of employees] in the form of a gift or honorarium; and he suggested that that be con-sidered; and all of the stockholders acquiesced and were glad to do it; and the result was that it was understood that we would come forward and make these presents or gifts to these employees that were to be slated for it." The checks were distributed by Mr. Halle and in each instance, where given to the recipients personally, he stated that the moneys represented by said checks were given to them and each of them, by said Unopco Corporation, as a gift and gratuity, and were therefore not subject to income tax on the part of the recipients; and in the letters accompanying the checks sent by mail the same statement in substance was made.

The records of the Universal show that bonuses had been paid its employees every year from 1925 to 1930, inclusive.

▋▋▋ "Whether a payment in a given case shall be deemed taxable compensation or a gift exempt from tax depends upon the intention of the parties, and particularly that of the employer, to be determined from the facts and circumstances surrounding the transaction." Fisher v. Commissioner (C.C.A.) 59 F.(2d) 192, 193. It seems to us that where an employee, although he has been paid his agreed salary, is given an additional sum or sums by his employer raises a strong presumption that such payments were compensations for services rendered, and should be given its due consideration by a tribunal imposed with the duty of determining whether gift or compensation for services was contemplated.

▋▋▋ In addition to that presumption we have here, on the one side, the votes of the directors and stockholders to grant a bonus, which imports compensation, in recognition of the services given, and the practice of the Universal to give bonuses to its employees; and, on the other hand, the statements of the president to the stockholders that it should be in the form of a gift or honorarium and to the recipients that it was such—presenting a clear case of conflicting evidence.

In Old Colony Trust Company v. Commissioner, 279 U.S. 716, 730, 49 S.Ct. 499, 504, 73 L.Ed. 918, there is a dictum to the effect that "the payment for services, even though *entirely voluntary* [is] nevertheless compensation within the statute." (Italics supplied.) Here, according to the resolution, the money "paid and distributed as a bonus to sixty-four (64) former and present employees, attorneys and experts

of Universal" was "in recognition of the valuable and loyal services of said employees, attorneys and experts to said Universal." And if the dictum in the Old Colony Trust Company Case states the law governing the matter, the payment and distribution, though entirely voluntary, being for "valuable and loyal services" was, nevertheless, compensation within the statute, and, if so, taxable to the recipients. The phrase "entirely voluntary" payment for services used in that opinion means substantially the same as the stipulation of the parties in this case that "neither Unopco nor any of its stockholders, nor the stockholders of Universal were at any time under any legal or other obligation 'to pay any of said employees, attorneys or experts, including petitioners, any salary, compensation or consideration of any kind.' "

If, however, the dictum in the above-cited case is too broad and an entirely voluntary payment for services may not be compensation within the statute and taxable to the recipient, we are nevertheless of the opinion that the payment and the circumstances attending it may properly be considered in determining whether the payment was a gift or compensation for services. And as all the evidence in this case, including therein that just mentioned, bearing on the question whether the payment was a gift or compensation for services was conflicting and the conflict has been determined by the Board of Tax Appeals, its determination was final. Lougee v. Commissioner (C.C.A.) 63 F.(2d) 112.

We find no occasion to analyze the cases cited by the parties as authorities on the one side or the other. While they may be an aid to the reasoning of the fact-finding body in arriving at a conclusion, the facts and circumstances are different in each case and would not aid us in determining whether there was conflicting evidence here.

 The petitioners insist that because Unopco was a separate corporation from that of Universal as a matter of law it could not compensate the past employees of Universal for services rendered that company. But the services that were rendered Universal before the sale were rendered to the very same stockholders who voted the additional payments, and the assets of Unopco were a part of the assets of Universal which had been enhanced by such services. We see no reason why the stockholders of Unopco, appreciating the value of those services to them and that without such services Unopco might have had no assets, could not grant compensation therefor. Bass v. Hawley (C.C.A.) 62 F.(2d) 721.

The order of the Board of Tax Appeals is affirmed.

MORTON, Circuit Judge (dissenting).

I do not think there was any evidence before the Board of Tax Appeals warranting a finding that the payment in question was compensation. If the situation had been reversed, the Commissioner would have scouted any claim that this payment was deductible business expense of the Unopco Corporation,—his counsel conceded at the argument that he probably would not have allowed it. He would have pointed out that there is nothing whatever on which to found such a claim. The deceased taxpayer had never been employed by Unopco in any capacity. He had never been regularly employed by the Universal Company. He was a professional man in independent practice who had been consulted by the Universal Company on matters within his field and had testified in patent suits, and had been paid for so doing. Unopco had never had any relations at all with him. The distribution was not treated by Unopco Company as compensation. It was treated as a gift and was so approved by stockholders, as well as by the directors.

What an employer out of generosity adds to the pay of an employee is sometimes held to be compensation. Here there was no pay to add to. The persons who had made a great fortune in Universal when they sold it out organized Unopco as a sort of investment corporation to handle their funds, and having done so, made gifts from those funds to various persons whose services had assisted in the success of Universal. I cannot see the slightest evidence of compensation, and I think the decisions support this view. Lunsford v. Commissioner, 62 F.(2d) 740 (C.C.A.6); Cunningham v. Commissioner, 67 F.(2d) 205 (C.C.A.3); Jones v. Commissioner, 31 F.(2d) 755 (C.C.A.3); Blair v. Rosseter, 33 F.(2d) 286 (C.C.A.9). Cases should be distinguished in which the donor deducted the payment as a business expense (Fisher v. Commissioner, supra, relied on in the majority opinion, Lougee v. Commissioner, 63 F.(2d) 112 (C.C.A.1)),

those in which the payment was not approved as a gift by the stockholders, and those in which there was consideration for the payment or an obligation to make it.