## BOGARDUS v. HELVERING. *
### No. 230.

Circuit Court of Appeals, Second Circuit.
March 8, 1937.

*Writ of certiorari granted 57 S.Ct. 790, 81 L.Ed. —.

SWAN, Circuit Judge, dissenting.

———◆———

Cravath, de Gersdorff, Swaine & Wood, of New York City (Richard H. Wilmer, of Washington, D. C., and George G. Tyler and William D. Whitney, both of New York City, of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and John J. Pringle, Jr., Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This case involves the question whether the taxpayer, Bogardus, received "compensation for personal service" under section 22 (a) of the Revenue Act of 1928 (26 U. S.C.A. § 22 and note), when in 1931 the Unopco Corporation paid him $10,000 in the following circumstances. He had been in the employ of the Universal Oil Products Company; how long and in what capacity the record does not disclose; his salary for the year 1930 had been $6,000 and he had received a bonus of $2,000 at the end of the year. The company had been extraordinarily successful in its business, which consisted of granting licenses under patents for methods of oil refining; its revenues, beginning in 1922, had by the end of 1930 become very large, and its assets extremely valuable. Very early in the year 1931, its shareholders sold all their shares to the United Gasoline Corporation for $25,000,000, having just before withdrawn $4,100,000 from their treasury, which they transferred to a new company, organized for the purpose, and called the Unopco Corporation, whose shares they issued to themselves in the old proportions. This new company had no other assets, and its only business was to manage and invest the fund transferred. The shareholders had no interest in the United Gasoline Company, and had of course parted with all interest in the Universal Oil Products Company. The former employees of that company remained in its employ—Bogardus among them. A few days after these transactions were completed the president of the Unopco Corporation at a meeting of shareholders declared that "during these years while we were struggling and moving forward, we had had the loyal support of a number of employees most particularly, and he thought it would be a nice and generous thing for us to show our appreciation and to remember them in the form of a gift or honorarium; * * * all of the stockholders acquiesced and were glad to do it; and the result was that it was understood that we would come forward and make these presents or gifts to these employees that were to be slated for it." The beneficiaries comprised patent attorneys, solicitors and experts—some of them not retained since 1922 or 1923—engineers and chemists; and one was the sister of an employee who had been killed by an explosion. The resolution adopted by the board of directors was that the company "pay and distribute the said sum of Six Hundred Seven Thousand Five Hundred Dollars ($607,500) as a bonus to sixty-four (64) former employees, attorneys and experts of said Universal Oil Products Company, in recognition of the valuable and loyal services of said employees, attorneys and experts to said Universal Oil Products Company" in such sums as the directors should decide. The Unopco Corporation made no effort to deduct these payments as an expense of its business in its income tax return, and the donees did not charge themselves with what they received. The Board has held them all liable for a tax calculated upon the payments as income, and the Circuit Court of Appeals for the First Circuit has affirmed the ruling as to one, Judge Morton dissenting. Walker v. Helvering, 88 F.(2d) 61.

Such payments may be at once "gifts" under section 22, subdivision (b) (3), 26 U.S.C.A. § 22 and note, and "compensation for personal service" under subdivision (a). Subdivision (b) was indeed entitled "Exclusions," and since it declared that the prescribed items "shall be exempt

from taxation," it would perhaps not be unnatural to assume that, but for that exemption, they would have been within subdivision (a). Nevertheless it is evident upon reflection that some of them at least could by no possibility be "gains or profits," or among any of the specific items which that subdivision enumerated; for example, life insurance; compensation for sickness or injury; and "inheritances" as well—unless in a very remote possibility. In these cases at any rate, the "exclusions" were not exceptions from gross income, and must have been included out of abundant caution. Furthermore, subdivision (b) (3) did not exempt under all conditions the specific items which it contained; for example, though a bequest or device to executors merely for qualifying is not "compensation for personal services" (United States v. Merriam, 263 U.S. 179, 44 S.Ct. 69, 68 L.Ed. 240, 29 A.L.R. 1547), it becomes such, if it is conditional on performance. Ream v. Bowers, 22 F. (2d) 465 (C.C.A.2); Rose v. Grant, 39 F. (2d) 338 (C.C.A.5). And indeed in all the cases where the taxability of bonuses and the like has been mooted, the payments have been legal gifts; except as they were, the taxpayer's position would not have been even plausible. The question has been whether, though gifts, they were also "compensation for personal services"; decisions like Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918, proved that they could be both. When the donor is not an obligor, that is, when he is under no legal sanction to make the payment, the decision must therefore depend upon his intent—perhaps more properly upon his motive—and so the courts have very generally put it. Fisher v. Commissioner, 59 F.(2d) 192 (C.C.A.2); Schumacher v. United States (Ct.Cl.) 55 F.(2d) 1007, 1011; Bass v. Hawley, 62 F.(2d) 721 (C. C.A.5); Botchford v. Commissioner, 81 F.(2d) 914 (C.C.A.9).

We have, however, not found much help in learning what that intent or motive must be, and, while the issue remains unsettled, it seems scarcely profitable to catalogue the evidence; we rather need a test by which to determine what evidence is relevant. We agree that a man may make a gift to an old employee without meaning it as "compensation"; though probably such cases will be uncommon, especially if he declares that the payment is "in recognition of" past services. We will assume that the gift would be nothing more, if for instance the donor believed that what he had paid in the past was the full measure of anything that the employee was then "entitled to"; that in fairness he did not "owe" a cent; and that anything he might give was not only beyond what the law would exact, but what the employee could in justice demand. Even so the past services would be the cause of the gift in the sense that except for them the donor would never have been moved to spontaneous generosity, but the gift would not pay for the services. On the other hand, employers sometimes feel that their employees have never·been paid in full; that their services deserved more than they have received; that the account between them is not quite in equitable balance. Such gifts are "compensation"; they are not only the result of the past relation, but they are a return specifically allocated to the donee's services. For example, a patient may increase his surgeon's bill; it would be "compensation," though a gift; yet, if he made him a present only because his skill, solicitude and kindness had bound them in a warm friendship, it would not be. A donor must not be moved to satisfy some uneasiness, some scruple, some sense that there is an outstanding claim which those would recognize to whose opinion he is sensitive: something which makes the payment more than an unconstrained act of affection or regard. In determining that question, the absence of any claim for deduction in the donor's tax return is of very little significance.

In the case at bar the parties have stipulated that "the payments were not made or intended to be made by said Unopco Corporation, or any of its stockholders as * * * compensation for any services rendered * * * by any of said employees * * * to said Unopco Corporation or to any of its stockholders. All of the recipients * * * were employees * * * of said Universal Oil Products Company at the time of the payment * * * or had been prior thereto." This means that the donees had not been employees of the shareholders, but it does not mean that the shareholders had not benefited by those services, as they clearly had, since nobody else could. The intent and a motive of the shareholders was necessarily that of the donor, Unopco Corporation, which could have no independent intent and motive; and that intent and motive were pre-

cisely the same as though the shareholders had been the employers of the donees, which they were not. There is therefore no real difference in this regard between this case and Fisher v. Commissioner, supra, 59 F.(2d) 192. Nor is there any substantial difference in the motive which actuated that gift and these; for that decision cannot stand upon the donor's self-interest except by very strained assumptions; a bonus to a retiring president would very remotely affect the morale of the personnel at large; or even the donee's successor. The answer here is indeed doubtful, but on the whole we should have decided with the Board, had the decision been ours. The determining considerations appear to us to have been a little like those which control an award of salvage. The salaries and bonuses which had been paid while success was in doubt were fair enough as things then stood; but the highest hopes had been finally realized, and it seemed "nice and generous" to "recognize" by sharing the prize, those "loyal services" which had contributed to make them come true. The use of the words "honorarium" and "bonus" was particularly significant; shades of intent are often best seen by such unconscious choices. "Honorarium" is a word never used except to denote a compensatory payment; it is the very type of taxable transactions of this sort; and "bonus" is only a little less definite. Left to ourselves we should therefore have been disposed to say that these gifts were actuated by a sense that in fairness the donees deserved something more than they had got in the past, now that the ship had come in. But the decision is not primarily for us at all; the Commissioner had first to make his, and then the Board its own; more exactly, the taxpayer had to show the Board that the Commissioner had been wrong, and he must show us not only that the Board was wrong, but that its conclusion was beyond any reasonable inference from the evidence. We cannot go that far, whatever would have been our doubts, if we had been in its place; indeed, so impalpable are the determinants, that in such cases its conclusion will generally be final.

Nor are we embarrassed because one of the payments was to the sister of an employee who was killed in the company's service. It is quite true that the motive in that instance could not have been to compensate her for his services, but it was to compensate her for his loss nevertheless: at least it may have been. There was no inconsistency in harboring such a motive along with a desire to compensate others for their contribution to the outcome. So far as it is relevant at all, that gift tended to confirm the Board's conclusion.

Order affirmed.

SWAN, Circuit Judge (dissenting).

I cannot agree that the Board's decision, as expressed in its opinion, that the payments in question "were additional compensation in consideration of services rendered to Universal and were not tax-free gifts" is conclusively binding upon the court. The Board made no express finding that the payments were intended by Unopco or its stockholders as additional compensation for services of the recipients. Indeed, it was stipulated that "said payments were not made or intended to be made by said Unopco Corporation or any of its stockholders as payment or compensation for any services rendered or to be rendered or for any consideration given or to be given by any of said employees, attorneys or experts to said Unopco Corporation or to any of its stockholders." The evidentiary facts were undisputed, and I think the court is free to decide whether as a matter of law the payments were taxable or nontaxable. See General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 206, 56 S.Ct. 185, 80 L.Ed. 154; Washburn v. Commissioner, 51 F.(2d) 949, 951 (C.C.A. 8); Burnet v. Lexington Ice & Coal Co., 62 F.(2d) 906, 909 (C.C.A. 4); Commissioner v. Bonwit (C.C.A. 2, Feb. 8, 1937) 87 F.(2d) 764.

If the question is open, I am constrained to a different conclusion from that reached by my brothers. To my mind the facts indicate that the shareholders of Unopco, by reason of selling their Universal shares for such fabulous sums, were moved to an act of "spontaneous generosity," rather than actuated by a sense of moral obligation to pay for services, inadequately compensated in the past, from which they had benefited—if that distinction is to be the test between taxable and nontaxable gifts. The recipients of these payments were employees, attorneys, and experts of Universal, many of whom had had no connection with that company since 1922. There is nothing to indicate that their services had not been adequately, or even generously, paid for by Universal when they were rendered, nor

650

that any shareholder had any feeling that the accounts were not in "equitable balance" during all these years. Not until after the Universal shares had been sold and the president of Unopco suggested that it would be "a nice and generous thing" to show their appreciation in the form of a gift or honorarium was the matter of these payments ever considered. One of the recipients was the sister of an employee who had lost his life in 1919. Certainly the payment to her was purely a gift and cannot be taxed as compensation for services; yet there is nothing to indicate that the payment to her was actuated by any different motive from the payments to the others.

When an employer makes a voluntary payment to his employee, it is reasonable to infer, in the absence of very special circumstances, that it is intended as additional compensation. Fisher v. Commissioner, 59 F.(2d) 192 (C.C.A. 2). When the payment is by a stranger, the natural inference is that of a gift. Lunaford v. Commissioner, 62 F.(2d) 740 (C.C.A. 6). Stockholders of a corporate employer, though legally strangers to its employees, may make gifts intended as additional compensation. Bass v. Hawley, 62 F.(2d) 721 (C.C.A. 5). There the stock of the corporate employer was owned by a holding company, which made the payment and had an interest to be served in maintaining the loyalty and good will of the employees to their corporate employer. In the present case the stockholders of Unopco can receive no possible benefit from payments to former or present employees of Universal. The decision of the majority of the court goes further than any previous authority except Walker v. Commissioner (C.C.A. 1, Feb. 12, 1937) 88 F.(2d) 61, involving the same transaction as the case at bar. I agree with Judge Morton's dissent in that case.