## HALL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4121.

Circuit Court of Appeals, Fourth Circuit.
April 6, 1937.

William D. Whitney, of New York City (Richard H. Wilmer, of Washington, D. C., and George G. Tyler and Cravath, DeGersdorff, Swaine & Wood, all of New York City, on the brief), for petitioner.

John J. Pringle, Jr., Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals; and the question involved is whether a payment of $50,000 made to taxpayer was a gift or additional compensation for services rendered. Taxpayer is a patent attorney who over a period of years had rendered services to the Universal Oil Products Company, a corporation whose chief property consisted of certain patents and patent rights. In 1931 the stockholders of that corporation sold their stock for $25,000,000 to the United Gasoline Corporation. Shortly prior to the transfer, however, and in accordance with the terms of sale, the Universal Oil Products Company transferred liquid assets to the value of $4,100,000 to the Unopco Company, a corporation whose stock was held by the stockholders of Universal in the same proportion in which they held the stock of the latter corporation. Within a few days after the sale and transfer, the $50,000 in question was paid to taxpayer by the Unopco Company pursuant to resolutions of its directors and stockholders appropriating $607,500 to be distributed as a "bonus" to sixty-four former and present employees, attorneys, and experts of Universal "in recognition of the valuable and loyal services of said employees, attorneys and experts" to Universal, in such amounts to each employee, attorney, and expert as the board of directors of Unopco should determine.

The foregoing resolutions of the directors and stockholders of Unopco were adopted pursuant to a suggestion made at a meeting of those who had been stockholders of Universal and were then stockholders of Unopco, to the effect that they show their appreciation of the loyalty and support of some of the employees of Universal

by making them a "gift" or "honorarium"; and when checks were delivered to those to whom the directors determined that distribution should be made, the recipients thereof were notified that the amounts thus received were gifts or gratuities and were not subject to income tax. It appears that no claim was made, either by Unopco or Universal, for any deduction for income tax purposes on account of the distribution made pursuant to the resolutions, and that no return of same as income was made by any of the recipients.

The Board of Tax Appeals held that the payments made pursuant to the resolution were additional compensation in consideration of services rendered to Universal, and not tax free gifts. —— B.T.A. ——. Its decision has been affirmed by the Circuit Courts of Appeals of the First and Second Circuits, one judge dissenting in each case, on the hearing of petitions for review filed on behalf of the estate of William H. Walker, and by Arthur G. Bogardus, Walker, and Bogardus having received the sum of $10,000 each from Unopco pursuant to the resolutions to which we have referred. Walker v. Com'r (C.C.A.1st) 88 F.(2d) 61; Bogardus v. Helvering (C.C.A.2d) 88 F. (2d) 646.

■■■ We think that the finding of the Board is amply supported by the testimony. The stockholders of Unopco were the same persons who had been stockholders in Universal when the persons to whom payments were made rendered services to that corporation, and they held the same proportionate interests in the stock of Unopco that they had held in the stock of Universal. The assets of Unopco had been transferred to it by Universal, and the payments made from these assets were not essentially different in character from what they would have been if they had been made from Universal's assets before the transfer of the stock. In other words, Universal had made large profits while in the hands of the original stockholders, in part, we may assume, as a result of the services of those to whom the payments in question were made; those who had profited felt that additional compensation should be paid to those who had served the corporation in the making of the profits; and such additional compensation did not lose its character as such merely because it was paid by a corporation owned by the original stockholders of Universal to which a part of the assets of that corporation had been transferred, instead of

being paid by Universal itself. If the payments had been made by Universal before the transfer to Unopco, the assets transferred to the latter corporation would have been less by the amount of the payments; and we cannot see that it makes any difference that they were made from the assets of Unopco after the transfer instead of from the assets of Universal beforehand. Where motive and intent are determining factors, we should look to the substance of transactions and not to the form in which the parties have clothed them.

The case is not different in principle from Bass v. Hawley (C.C.A.5th) 62 F. (2d) 721, 723, where the additional compensation there in question was paid by a holding company of the employing corporation, and where in holding that the payment thus received was not to be treated as a gift but as taxable income the Circuit Court of Appeals of the Fifth Circuit, speaking through Judge Sibley, said:

"Again it is objected that the employer was not the Holding Company or its stockholders, but was the Railroad Company, and that the Railroad Company alone could make additional compensation; that a voluntary payment by any one else is necessarily a gift. The objection would have force where the third person had no interest in the employment and no cause to feel obligated to compensate the service. But in this case although the stockholders authorized the payment, it was made out of funds really belonging to the Holding Company as the proceeds of the sale of its assets, and the Holding Company was the sole owner of the Railroad Company. If the additional compensation was fairly due, and should have been paid out of the Railroad Company's assets, it would have come to the same thing in settling with the Southern Pacific Company. The situation produced by the sale made it inevitable that whatever was paid should eventually be the loss of the stockholders. In determining the incidence of taxation, corporate organization of taxpayers is not ordinarily to be disregarded. Burnet, Commissioner, v. Commonwealth Improvement Co. [287 U.S. 415], 53 S.Ct. 198, 77 L.Ed. [399]; Burnet, Commissioner, v. Clark [287 U.S. 410], 53 S.Ct. 207, 77 L.Ed. [397], decided December 12, 1932; Planters' Cotton Oil Co. v. Hopkins, Collector (C.C.A.) 53 F.(2d) 825. But in a case like this where neither corporation nor stockholder is the taxpayer, and motive and intent is the question, the

substance of the matter should be looked to."

Another case applying the same principle in the case of additional compensation paid by a holding company is Schumacher v. United States (Ct.Cl.) 55 F.(2d) 1007, 1011, where the court said:

"It is immaterial that the payment received by the plaintiff was made by the holding company rather than by the company for which he had rendered services. The entire capital stock of the railroad company was owned by the holding company. The economic interests of the two companies were identical. The purchase price received from the sale of the railroad company went to the holding company. That the money received by the plaintiff was not paid directly by the railroad company but was paid by the stockholder's committee of the holding company does not change the essential character of the transaction, and make a gift out of what was intended to be, and in fact was, additional compensation for services rendered."

When the complication introduced by the fact that the payment was made by Unopco instead of by Universal is thus resolved, the case presents no difficulty. What we have is clearly not a gift but additional compensation paid former employees and attorneys, differing in no material particular from ordinary bonus payments made on account of services. It is true that the evidence shows that the former president of Universal, who was also the president of Unopco, introduced the subject of making the payments at a meeting of the former stockholders of Universal by way of a suggestion that the former employees be given a gift or honorarium, and that when the payments were made to the recipients they were advised that such payments were gifts not subject to income tax; but it also appears that the reason given by the president for making the "gifts" was the loyal services of the employees and the fact that the stockholders had profited so greatly therefrom. His proposal and the reaction of the stockholders thereto is thus described in the record by one who was present at the meeting, viz.: "We had reason to congratulate ourselves on our very great good fortune in this company which started with nothing, to all intents and purposes, and had been built up in this phenomenal way; and we had all profited very largely; and during these years while we were struggling and moving forward, we had had the loyal support of a number of employees most particularly, and he thought it would be a nice and generous thing for us to show our appreciation and to remember them in the form of a gift or honorarium; and he suggested that that be considered; and all of the stockholders acquiesced and were glad to do it; and the result was that it was understood that we would come forward and make these presents or gifts to these employees that were to be slated for it." In other words, the stockholders were cutting a larger melon than they had anticipated and felt that certain faithful employees who had contributed greatly to its growth should be given a larger share than had theretofore been allotted them. That the stockholders understood and intended that the payments should be additional compensation for services rendered appears from the face of the resolution authorizing them, which is as follows:

"That the sum of Six Hundred Seven Thousand Five Hundred Dollars ($607,-500.) be appropriated, paid and *distributed as a bonus to sixty-four (64) former and present employes, attorneys and experts* of Universal Oil Products Company (the corporation of that name referred to in the meeting of this Corporation held on the fifth and sixth days of January, 1931), *in recognition of the valuable and loyal services of said employees, attorneys and experts to said Universal Oil Products Company;* such sum to be distributed among said sixty-four (64) employees, attorneys and experts in such amounts to each employee, attorney and expert as the *Board of Directors of this corporation* shall determine." (Italics ours.)

The case falls squarely within the principle laid down by us in Noel v. Parrott (C.C.A.4th) 15 F.(2d) 669, 671. The distributions were made, not without consideration, but in consideration of services rendered in the past. That there was no obligation on the part of either Universal or Unopco to make the additional distribution is immaterial. "The payment for services, even though entirely voluntary, was nevertheless compensation within the statute." Old Colony Trust Co. v. Com'r of Int. Rev., 279 U.S. 716, 724, 730, 49 S.Ct. 499, 504, 73 L.Ed. 918, approving Noel v. Parrott, supra. As pointed out in Bass v. Hawley, supra, cases to the contrary, some of which are relied on by the petitioner here, are without even persuasive force since the decisions of the Supreme Court in the Old

Colony Case, supra, and Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733, in the latter of which it was held that additional compensation, reasonable in amount, could be claimed as a deduction by the corporation paying it, even though there was no obligation to pay same. See, also, Botchford v. Com'r (C.C.A.9th) 81 F.(2d) 914; Levey v. Helvering, 62 App. D.C. 354, 68 F.(2d) 401; Fisher v. Com'r (C.C.A.2d) 59 F.(2d) 192; Weagant v. Bowers (C.C.A.2d) 57 F.(2d) 679.

While for the above reasons we approve of the conclusion reached by the Board of Tax Appeals, we think that, as there was unquestionably substantial evidence supporting the conclusion, we are bound by it in any event. Elmhurst Cemetery Co. v. Commissioner (U.S.) 57 S.Ct. 324, 81 L.Ed. ——; Lougee v. Commissioner (C.C.A.1st) 63 F.(2d) 112; Walker v. Commissioner, supra; Bogardus v. Helvering, supra.

For the reasons stated, the decision of the Board of Tax Appeals will be affirmed.

Affirmed.