HERMAN JACOB FLAX, Plaintiff and Appellant, *v.* TREASURER OF PUERTO RICO, Respondent and Appellee.

No. 10956. Argued March 1, 1954.—Decided April 22, 1954.

*Gutiérrez, Saldaña & Sánchez* and *C. Morales, Jr.,* for appellant. *Francisco Espinosa, Acting Assistant Attorney General,* and *Manuel J. Medina Aymat, Assistant Attorney,* for appellee.

Mr. Justice Ortiz delivered the opinion of the Court.

The question for decision is whether certain payments made to Herman Jacob Flax by virtue of a scholarship granted to him by the State Insurance Fund constituted taxable income under § 15 (a) of the Income Tax Act, which defines the term "gross income" as including, among others, "compensation for personal services . . . and income . . . from any source whatever", or if such payments constitute "gifts" under § 15 (b) (3) of the same Act, which provides that said term does not include, among others, "the value of property acquired by gift."

During 1947 Dr. Herman Jacob Flax was working in the State Insurance Fund and on October of that same year

he was granted a scholarship to take a specialized course in the University of Pennsylvania. On September 10, 1947 the State Insurance Fund signed a contract with Dr. Flax in which the Fund bound itself to deliver to Dr. Flax the amount of $1,000 for traveling expenses and tuition, an amount which he actually received in the year 1947. The Fund also bound itself to pay to Dr. Flax the monthly sum of $475 to help him defray other expenses. That amount coincided exactly with the monthly salary of $475 which Dr. Flax had been receiving as an employee of the Fund and it is precisely the payments received during the first eight months of the year 1948 by virtue of the scholarship which are now in issue in the case at bar. By that contract, Dr. Flax committed and bound himself to take an eight months course in Physical Medicine and to remain in the service of the State Insurance Fund for two years after his graduation. The contract provided in part the following:

"First: The party of the second part commits himself to take an eight months course in PHYSICAL MEDICINE, at the Graduate School of Medicine, Medico Chirurgical College, University of Pennsylvania, Philadelphia, beginning October 1, 1947. . . .

"Second: The party of the second part binds himself to remain in the service of the State Insurance Fund at the completion of the course of training in the dispensaries and clinics of said institution for a period of not less than TWO years.

"Third: If at the completion of the course the party of the second part should not return to his employment as agreed upon, or if . . . he should resign or abandon his position . . . he shall be indebted . . . to reimburse the party of the first part the total amount received. . . ."

The authority of the Fund to grant the aforesaid scholarship was based on § 6 of Act No. 388, approved on April 22, 1946, which provides:

"The Manager of the State Insurance Fund is authorized to appoint, through contract, the necessary technical and

administrative personnel and assistants for the purpose of organizing the services and operating the Hospital of Industrial Medicine and Surgery and of Physical Rehabilitation as well as to fix the salaries thereof. He shall also have the power to grant, chargeable to the State Insurance Fund, scholarships for the time that may be necessary for the preparation of the necessary technical and administrative personnel, subject to the approval of the Executive Council."

By virtue of the aforesaid contract at the end of 1947 Dr. Flax went to the United States where he stayed until June 1948. He returned to Puerto Rico and continued discharging his position in the State Insurance Fund with the same monthly compensation of $475 until July 20, 1948, when he signed a new contract and began to receive a yearly salary of $6,300.

Dr. Flax filed his income tax return for the year 1948. The Treasurer of Puerto Rico notified Dr. Flax, as a taxpayer, of a deficiency of $3,800, by virtue of the monthly payment of $475 received during the eight months course mentioned in the scholarship. Finally, and after the proper steps were taken, the Superior Court, San Juan Part, rendered judgment sustaining the deficiency determined by the Secretary of the Treasury for the year 1948. Dr. Flax has appealed from that judgment to this Court and alleges, essentially, that the monthly payment of $475 while the scholarship was in force, constituted a gift and not taxable income.

■ Payments made as a premium or compensation for services already rendered, and not through mere liberality, spontaneous generosity, good will, esteem, benevolence, affection, admiration or charity constitute taxable income and not gifts exempted from the payment of income tax. *Treasurer* v. *Tax Court; Franco, Int.,* 73 P.R.R. 830; *Robertson* v. *United States,* 343 U. S. 711; *Old Colony Trust Co.* v. *Commissioner,* 279 U. S. 716; *Carragan* v. *Commissioner,* 197 F. 2d 246, decided May 1952, Judge Frank indicating that

the services rendered accounted for the payment; *Smith* v. *Manning*, 189 F. 2d 345; *Bausch's Estate* v. *Comm.*, 186 F. 2d 313. See also the cases of *Buscaglia, Treas.* v. *Tax Court, Widow of Obén, Int.*, 70 P.R.R. 467 and *Bogardus* v. *Commissioner*, 302 U. S. 34, where according to the special circumstances, not applicable herein, it was held that the payment was a gift and not taxable income, but the general definition which we have stated was accepted.

■ In the case at bar, the scholarship was not granted as compensation for former services or for services to be rendered while the scholarship was in force, but it was granted in consideration of services to be rendered in the future, after the termination of the course of studies which was the object of the scholarships. A previous payment for future services is taxable income and not a gift, especially where there is a relation of master and servant between the payor and the payee and especially when, as in the case at bar, the employee has contractually bound himself to render services in the future in consideration of such former payment. Therefore, it is not the case of payments made for purely altruistic motives, of benevolence and generosity but rather of payments made in anticipation of future benefits for the payor. In *Buscaglia, Treas.* v. *Tax Court, Widow of Obén, Int.*, *supra*, although it is concluded that it was the case of a gift by virtue of circumstances which differ from the case at bar, this Court cites Mertens, *Law of Federal Income Taxation* to the effect that compensation for services to be rendered in the future constitute taxable income and not a gift. 1 Mertens 387. In *Bogardus* v. *Commissioner*, *supra*, although it was concluded that it had been a tax-free gift because of facts which differ from those of the case at bar, it is stated that payments made by virtue of services to be rendered in the future constitute a taxable income and not a gift. It was further stated in the *Bogardus* case that the payment constituted a gift because "There

is entirely lacking the constraining force of any moral or legal duty, as well as the incentive of anticipated benefit of any kind, beyond the satisfaction which flows from the performance of a generous act." *Bogardus* v. *Commissioner*, *supra*, at pp. 40, 41. In that same case, that of *Old Colony Trust Co.* v. *Commissioner*, *supra*, is distinguished by stating the following, at page 40:

"There, (Old Colony Trust Co.) an employer had paid the income tax assessed upon the salary of an employee. The employee had entered upon the discharge of his duties for the year in question under an express agreement to that effect. Quite evidently the payment, so agreed upon in advance, was in consideration of services to be rendered and in no sense a gift. It was a part of the employee's compensation; and the court so held."

The same doctrine that payments for future services are taxable, arises from the cases of *Davis* v. *Commissioner*, 81 F. 2d 137 and *McCoy-Brandt Mach. Co.*, 8 B.T.A. 909. See also 36 Mich.L.Rev. 1425, 1426 and Magill, *Taxable Income*, p. 402, 403 (payments made for special services of employees or to insure their remaining in the employ, are taxable).

As a starting point for a more thorough analysis of the problem raised, we must bear in mind that the payments received by the taxpayer and appellant fall within the general and broad definition of the term "gross income" under § 15 (a) of the Act, that the tax-free gifts mentioned in § 15 (b) (3) are a specific exception to the sweeping concept of "gross income,' that in view of the generalization in the definition of the term "gross income" the legislature obviously intended to tax income comprehensively in providing that every income is taxable unless specifically excluded by other provisions of the statute, and that therefore the exemptions specifically stated should be construed with restraint. *Commissioner of Internal Revenue* v. *Jacobson*, 336 U. S. 28; *Helvering* v. *American Dental Co.*, 318 U. S.

322; *United States* v. *Robertson*, 190 F. 2d 680, 682 affirmed in *Robertson* v. *United States, supra.* The first criterion, or first touchstone, should refer to the investigation of whether a specific income falls within the general definition of "gross income" and secondly to determine whether the income falls within the specific exemption concerning gifts. *Commissioner of Internal Revenue* v. *Jacobson, supra.* The burden of proving that it is a gift and not a taxable income is on the taxpayer. *Botchford* v. *Comm.*, 81 F. 2d 914.

 Several factors have been suggested in determining whether a specific payment is taxable income or a tax-free gift. See Magill, *Taxable Income*, p. 393 *et seq.*, revised edition; 2 Tax L. Rev. 85 *et seq.*; 29 *Taxes* 533 (1951); 33 Ill. L. Rev., 371; 36 Mich. L. Rev. 1425; 110 A.L.R. 285, 286; 1 Mertens 384 *et seq.* § 8.08. One of them refers to the absence or existence of consideration, pursuant to the definition of "consideration" prevailing in the legal system of the United States. In *Noel* v. *Parrott*, 15 F. 2d 669 (cited with approval in *Old Colony Trust Co.* v. *Commissioner, supra*, and in *Helvering* v. *American Dental Co., supra*), it is stated that a gift is a voluntary transfer of property by one to another, without any consideration or compensation indicating that gifts usually proceed from the generosity of the giver, and where there is any doubt as to the nature of the transaction, the absence of such motive is a pertinent circumstance. See also, *Schumacher* v. *United States*, 55 F. 2d 1007. A gift is a transfer of something for nothing. *Commissioner* v. *Jacobson, supra; U. S.* v. *Robertson, supra.* A negative criterion refers to the fact of whether the payments would not have been made without the services rendered. *Bickford* v. *Commissioner*, 34 B.T.A. 461. From the point of view stated, the payments in issue here were based on sufficient "consideration," that is, the discharge of services in the future on the part of the employee and the anticipated receipt of future benefits on the part of the employer, all by virtue of a contractual obliga-

tion. It is not a payment of something for nothing or out of sheer altruism or generosity. It is reasonably inferred that the payments would not have been made without the obligation to render services in the future.

The existence of consideration is not an exclusive factor. The solution of the dilemma depends greatly on the nature of the payor's intention, whether it was to make a gift or a payment in return for a *"quid pro quo,"* such intention being derived from the circumstances present. *Bogardus* v. *Commissioner, supra; Fisher* v. *Commissioner,* 59 F. 2d 192. There can be a gift when it is intended not as a return for value or made because of any intent to repay another what is his due, but when it is bestowed only because of personal affection or philanthropy. *Bass* v. *Hawley,* 62 F. 2d 721. The facts in the instant case show an intention other than that of making a gift. *Cf. Weagant* v. *Bowers,* 57 F. 2d 679. From the Act authorizing the Manager of the State Insurance Fund to grant scholarships it appears that the scholarships were meant to prepare the technical and administrative personnel necessary to organize the services and administer certain hospitals. It was not the Government's intention to make payments out of sheer generosity. From the contract with Dr. Flax it appears that the payments were made in consideration of the latter's obligation to render services in the future. The Government's purpose was to obtain valuable benefits by virtue of the specialized training of some of its employees.

■ Another factor of significant importance refers to the nature of the relations between the donor and the recipient. There is a presumption that an employer gives an allowance to an employee for services rendered and such compensation is taxable income rather than a tax-free gift. *Carragan* v. *Commissioner of Internal Revenue, supra; Smith* v. *Manning, supra; Poorman* v. *Commissioner,* 131 F. 2d 946; *Willkie* v. *Comm.,* 127 F. 2d 953, certiorari denied in 317 U. S. 659.

That presumption has not been rebutted in the case at bar.

■ Consideration paid pursuant to a contract or in the discharge of a contractual obligation, as here, is in no sense a gift. *Robertson* v. *United States*, 343 U. S. 711.

■ Another important consideration arises from the relation or comparison which may be established between the payment in controversy and the amount of salary which was paid to the employee. If the payment in issue notably exceeds the usual former salary, it is evidence that the payment is a gift, but if the payment is reasonably proportioned to the salary received, it carries with it a strong indication that it is taxable income. Magill, *ob. cit.* p. 400; *Landon* v. *Commissioner*, 16 B.T.A. 907; *Ringler & Co.* v. *Commissioner*, 10 B.T.A. 1134. In the case at bar the monthly payments not only exhibited the characteristics of proportionality to the monthly salary which was being received, but were exactly identical with such monthly salaries.[1]

The trial court did not err in holding that the sums involved herein were taxable income and not gifts. Therefore, the judgment appealed from will be affirmed.

Mr. Chief Justice Snyder did not participate herein.

---

[1] Naturally, in referring to gifts in the case at bar we do not follow the meaning of that concept under our Civil Code, but we employ its meaning under the income tax laws.