Rafael A. Buscaglia, Tesorero de Puerto Rico, peticionario,. *v.* Tribunal de Contribuciones, demandado; María Alvarez Vda. de Obén, interventora.

Núm. 214.—*Sometido:* Junio 10, 1949. *Resuelto:* Noviembre 15, 1949.

*Hon. Procurador General Vicente Géigel Polanco* y *J. C. Santiago Matos, Procurador General Auxiliar,* abogados del peticionario; *Charles R. Hartzell* y *José L. Novas,* abogados de la interventora, querellante en el pleito principal.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

La cuestión a resolver en este recurso es si cierta cantidad de dinero recibida por la interventora, durante el año 1944, de Luce & Co. o de la Central Aguirre Sugar Co., S. en C.,[1] constituye "compensación", bajo la sección 15(a) de la Ley de Contribuciones sobre Ingresos, que define el término "ingreso bruto" como que incluye, entre otros, "compensación por servicios personales . . . e ingresos . . . de cualquier procedencia", o "donación", bajo la sección 15(b)(3) de la misma Ley, que dispone que dicho término no incluye, entre otros, "El valor de propiedad adquirida por donación. . ."

Los hechos del caso son los siguientes:

Don Carmelo Obén fué empleado de la Central Aguirre Sugar Co., S. en C. y de Luce & Co. durante más de veinticinco años y al fallecer, la Junta de Directores de la Central, tomando en consideración la deplorable situación económica en que quedó su viuda—la interventora en este caso—decidió pasarle una pensión, la cual durante el año envuelto en este recurso, era de $200 mensuales.

El 15 de abril de 1947, el Tesorero de Puerto Rico, considerando la cantidad de dinero recibida por la interventora como parte de su ingreso bruto, le notificó una deficiencia ascendente a $297.89 por el año contributivo terminado en diciembre 31 de 1944. No conforme, ella se querelló ante el Tribunal de Contribuciones, el cual resolvió que el dinero recibido por la interventora era una donación, no constituyendo, por lo tanto, parte de su ingreso bruto.

En este recurso el Tesorero de Puerto Rico, alega que la cantidad de dinero aquí envuelta se concedía con el ánimo de compensar, formando parte del ingreso tributable, y que en

---

[1] Aun cuando en la prueba se hizo constar que era de la Central Aguirre Sugar Co., S. en C., en el alegato de la interventora se insiste en que era de Luce & Co. Fuera una o la otra, no varía la cuestión planteada.

todo caso, no era una donación por no haberse hecho la misma de acuerdo con lo provisto en el artículo 574 del Código Civil, edición de 1930, en cuanto a donaciones se refiere.(²)

La única prueba presentada por la interventora ante el Tribunal de Contribuciones fué la declaración del Sr. Juan G. García, cuyo testimonio fué resumido en la opinión del tribunal en esta forma:

". . . Depuso que es contralor de la Central Aguirre Sugar Co. Conoció a Carmelo Obén cuando éste era empleado de dicha empresa azucarera. La Central Aguirre no tenía plan alguno de pensiones para sus empleados a la fecha de la muerte de Carmelo Obén, la cual acaeció antes del año de 1946. Al fallecer Carmelo Obén los oficiales de la Central se encontraron con una viuda sin medios de vida, por lo cual la referida compañía comenzó a pasarle una renta mensual de $250 durante los primeros dos años. Después la pensión fué reducida a $125 mensuales. Esas partidas eran sometidas anualmente a la Junta de Directores de la Central Aguirre para su aprobación, y de haber sido desaprobadas, se habría descontinuado su pago. Esto era hecho un mes antes de expirar la fecha del plazo durante el cual había sido autorizada la erogación, pues la pensión no era por término fijo. Tampoco había plan de pensiones alguno ofrecido a los empleados.

"Al ser repreguntado dijo que todos los meses la Central Aguirre envía un cheque a la apelante para cubrir la referida pensión. Don Carmelo Obén trabajó para la Central Aguirre por espacio de 25 a 30 años, y a la fecha de su fallecimiento era empleado de dicha empresa. La aludida pensión fué concedida a la querellante uno o dos meses después de la muerte de Don Carmelo. La Central Aguirre deduce los referidos pagos en sus libros como gastos generales de administración."

Por su parte el Tesorero se limitó a presentar una carta de la interventora de fecha 8 de noviembre de 1946, que dice así:

---

(²)El artículo 574 dispone:

"La donación de cosa mueble podrá hacerse verbalmente o por escrito.

"La verbal requiere la entrega simultánea de la cosa donada. Faltando este requisito, no surtirá efecto si no se hace por escrito y consta en la misma forma la aceptación."

"Señor:

"En contestación a su atenta carta de septiembre 27 de 1946, con referencia a la pensión que recibo de Luce & Co., S. en C., paso a manifestarle que dicha pensión se me ha concedido en consideración a haber sido mi esposo empleado de dicha compañía durante muchos años y hasta el momento de su fallecimiento.

"Según se me ha informado, los pagos recibidos por ese concepto no constituyen ingreso neto tributable. (Mertens, Edición 1942, Volumen 1, página 392, Notas 4 y 5)."

El Tribunal de Contribuciones basó su decisión en las siguientes conclusiones: 1) que la pensión recibida por la interventora no constituía ingreso, ya que ella nunca ha prestado—ni antes ni después del fallecimiento de su esposo—servicios personales, ni de clase alguna, a la Central Aguirre Sugar Co.; 2) que la Central Aguirre, a la fecha del fallecimiento de Carmelo Obén, no tenía plan alguno de pensiones a sus empleados y, por tanto, la interventora no pudo ser una tercera persona beneficiaria (*third party beneficiary*) de ningún plan de pensiones a virtud de las relaciones de patrono y empleado que existieron entre su esposo y la compañía, y 3) que el hecho de que la Central Aguirre dedujera el importe de los pagos hechos a la interventora como gastos de administración ". . . no puede afectar la realidad inescapable de que los mismos constituían una donación y no un pago de compensación por servicios personales realmente prestados." No hizo pronunciamiento alguno en cuanto a si a los efectos de la pensión recibida por la interventora debió cumplirse con los requisitos para las donaciones bajo el Código Civil.

En cuanto al tercer fundamento expuesto por el Tribunal de Contribuciones bastará decir que la cuestión de si los pagos hechos a la interventora son o no deducibles por la compañía como gastos de administración no es, por sí sola, determinante de que dichos pagos constituyen una compensación tributable como ingreso de la interventora. Ese hecho aislado no es suficiente para demostrar cuál fué la verda-

dera intención de la compañía al hacer los pagos, aun cuando puede constituir un elemento de prueba al efecto. 1 Mertens, *Law of Federal Income Taxation,* sección 8.08, a la pág. 388 y casos citados en la nota 84; *Bogardus* v. *Commissioner,* 302 U. S. 34 (1937). No estamos ahora considerando ni resolviendo si la Central Aguirre Sugar Co. tenía o no derecho a hacer dicha deducción—cuestión ésta que podrá o no surgir en el futuro—sino que lo único que resolvemos es que no erró el Tribunal de Contribuciones en cuanto al tercer fundamento expuesto. Tampoco en cuanto a los dos primeros, ya que la prueba demostró que la interventora nunca ha prestado servicios personales de clase alguna a la compañía y se probó, además, que la compañía no tenía ningún plan de pensiones para sus empleados ni existía obligación contractual alguna de pasarles una pensión a sus viudas.

 El factor determinante en cuanto a si en un caso de esta naturaleza existe una compensación que constituye ingreso bajo la ley, es la intención de las partes y especialmente la de aquélla que efectúa el pago. Como dice Mertens:

". . . la intención con la cual se hizo el pago es la que prevalece. Si el pago, aunque se le llame compensación o en otra forma, intenta representar pago por servicios prestados, bien en el pasado, presente o futuro, aun cuando ya se haya satisfecho completamente por otros pagos, la cantidad recibida parecería representar ingreso tributable al que lo recibe. Si por otra parte, los pagos son hechos para demostrar buena voluntad o una mera benovelencia hacia el que los recibe y no se hacen con la intención de recompensar servicios rendidos, entonces los pagos representan donaciones y deben estar exentos. . . . " Ob. cit., pág. 387.

La determinación de cuál fué la intención de la parte al hacer los pagos envuelve una "conclusión legal o por lo menos la determinación de una cuestión mixta de hecho y de derecho . . . sujeta a revisión judicial", *Bogardus* v. *Commissioner,* supra, pág. 39, y aun la opinión disidente en dicho caso está conteste en que "Lo que prevalece es la intención

con que el pago, no empece cuán voluntario, haya sido hecho. ¿Ha sido hecho con la intención de que servicios rendidos en el pasado serán satisfechos más completamente aun cuando hayan sido pagados? Si es así, tributa. ¿Ha sido hecho para demostrar buena voluntad, estimación o benevolencia, hacia personas que han servido pero a quienes se les paga sin pensar en conceder una compensación por el servicio? Si es así, está exento.''

La misma pauta seguida para determinar la distinción existente entre compensación y donación, es aplicable a casos de pensiones. Al efecto dice Mertens:

''. . . Cuando la pensión es pagada como el resultado de un plan uniforme ofrecido como acicate al empleado para entrar al servicio del patrono, parecería representar compensación aun cuando concedida sin obligación legal o moral. . . . Cuando, sin embargo, los pagos se hacen sin convenio alguno de prestar servicios y sin que de hecho se hayan rendido servicios, los pagos no son tributables al que los recibe. A este resultado se ha llegado en cuanto a pagos hechos a una viuda de un funcionario fallecido([4]) . . .'' Ob. cit., pág. 392.

Del caso OD 1017, citado en la nota de Mertens, en la opinión del Tribunal de Contribuciones se cita lo siguiente:

''Una corporación pagó a la viuda de un funcionario fallecido cierta cantidad igual al sueldo que había ganado en dos meses. El pago fué sin consideración, una gratificación aprobada como un cumplido al fallecido. Se sostiene que el pago no constituye ingreso tributable.''

Para una discusión amplia de la cuestión aquí envuelta, véase *''Payments to Widows of Deceased Employees''* por William P. Oberdorfer, 25 *Taxes, Pamphlet* 8, pág. 711 (Agosto 1947), en el cual el autor, después de referirse al caso O.D. 1017, supra, y otros, afirma que existen conflictos en las decisiones y que a veces es difícil comprender la teoría precisa en que se basan, pero esto no obstante, concluye, a la pág. 719, que:

[4] IT 3329, CB 1939-2, p. 153; OD 1017, CB 5, pág. 101.

". . . parecería que siempre que los pagos sean de hecho voluntarios, no sean efectuados como consecuencia de un contrato o plan 'exigible' (*'enforceable'*) y no sean de hecho compensación por servicios rendidos, serán probablemente considerados como donaciones no tributables. . . . "

Entra en juego aquí lo que el autor considera la doctrina de una "obligación exigible", o sea, que cualquier pago al cual una viuda tenga un derecho adquirido exigible a virtud de un contrato o plan de pensión, es tributable como ingreso suyo. A este resultado se llegó en los casos de *Flarsheim* v. *United States*, 156 F.2d 105; *Varnedoe* v. *Allen*, 158 F.2d 467 (C.C.A. 5, 1946), *certiorari* denegado en 330 U. S. 821; *Sutro* v. *United States*, 42–2 USTC, sec. 9523, citado por Oberndorfer, ob. cit., nota 39 y en el texto de su artículo, pág. 717 y en el cual se resolvió que "La regla general es que un plan de esta naturaleza (plan de seguro, los premios pagados por el patrono) crea una obligación exigible por parte del empleado o su beneficiario, aun cuando el plan especifique que es voluntario" y se distinguió el caso de *Bogardus*, supra, diciéndose: "'Hay dos factores distinguibles en este caso: (1) La nueva compañía no dedujo las donaciones o bonificaciones como gastos para fines de la contribución sobre ingresos. (2) Estas no eran obligaciones exigibles. La Corte Suprema indicó que si estos dos elementos hubieran existido su decisión pudo haber sido otra.' "

Los hechos probados en el presente caso demuestran que si bien la Central Aguirre Sugar Co. dedujo los pagos efectuados a la interventora como gastos de administración, la intención de la compañía al efectuarlos fué un acto de mera generosidad hacia la viuda de un viejo empleado que había quedado en una precaria situación económica; que la compañía no actuó a virtud de un contrato con el empleado o de un plan de pensiones establecido como aliciente de sus empleados y como consecuencia de los cuales se crearía una obligación exigible a favor de la aquí interventora. Por el contrario, los pagos estaban sujetos a ser reducidos, como lo

fueron, o a cesar por completo cuando la compañía lo creyera conveniente. El hecho de que la interventora escribiera al peticionario diciendo que la pensión se le había concedido en consideración a haber sido su esposo empleado de dicha compañía durante muchos años y hasta su fallecimiento, no implica, como arguye el peticionario, que dicha pensión constituye una compensación adicional por los servicios del empleado. Como se dijo en el caso de *Bogardus* v. *Commissioner,* supra, a la pág. 44:

"Algún peso se da al hecho de que se dice que la gratificación se concede en reconocimiento de servicios leales en el pasado. Pero esto no significa más que el reconocimiento de un hecho histórico como razón para hacer las donaciones. Una donación no deja de serlo porque se inspire en gratitud por servicio leal en el pasado del que la recibe. . . ."

Y téngase en cuenta que en dicho caso la bonificación se hizo directamente a los empleados de una corporación anterior, por otra nueva que había adquirido todas sus acciones, y no como en el presente, a la viuda de un empleado.

No erró el Tribunal de Contribuciones al resolver que los pagos hechos por la compañía a la interventora no constituían parte del ingreso bruto de ésta para el año 1944, y sí una donación que está exenta del pago de contribución sobre ingresos. Tampoco erró al no hacer mención del artículo 574 del Código Civil, supra, pues en tanto en cuanto la compañía donante no haya impugnado la donación después de tener conocimiento de que la donataria había aceptado y cambiado los cheques que mensualmente le enviaba la compañía, la donación quedó perfeccionada entre ellos. Artículos 565 y 571 del mismo Código. La prueba demuestra que la donación en este caso fué por escrito, o sea hubo el acuerdo de los directores de la compañía aprobando los pagos por cheques mensuales y la aceptación también fué por escrito al endosar y cobrar los cheques mensualmente la interventora. El ejemplo que pone Manresa al comentar el artículo 632 del Código Civil

de España, equivalente al 574 del nuestro—V Manresa, quinta edición, pág. 117—en cuanto a que si el donante dispone que su banquero dé cierta suma al donatario, eso no constituye una donación verbal por no existir la entrega simultánea de la cosa donada, no es aplicable a los hechos del presente caso. Aquí hubo el acuerdo escrito de la donante e, interpretando racionalmente el alcance del artículo 574, supra, la aceptación por la donataria también fué por escrito, al endosar y cobrar los cheques, quedando notificada la donante al recibir los mismos ya cancelados.

*Debe confirmarse la resolución recurrida.*

El Juez Presidente Sr. De Jesús no intervino.

El Juez Asociado Sr. Negrón Fernández se inhibió.