**UNITED STATES v. ROBERTSON.**

No. 4243.

United States Court of Appeals
Tenth Circuit.

July 10, 1951.

Ellis N. Slack, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Harry Baum, Sp. Asst. to the Atty. Gen., Scott M. Matheson, U. S. Atty., and Bryant H. Croft, Asst. U. S. Atty., Salt Lake City, Utah, were with him on the brief), for appellant.

S. E. Blackham, Provo, Utah (Sandgren & Blackham, Provo, Utah, on the brief), for appellee.

Before BRATTON, MURRAH, and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

This appeal is taken from a judgment of the United States District Court for the District of Utah, which held that a sum of $25,000 received by the appellee, Leroy J. Robertson, herein referred to as the taxpayer, as a prize in a contest was not taxable income.

The facts necessary to a decision are not in dispute. In 1945, Henry H. Reichhold, an industrialist and philanthropist, as President of the Detroit Orchestra, Inc., offered three awards: $25,000, $5,000 and $2,500, respectively, for the best symphonic compositions written by native-born composers of North, Central and South America. As announced in the terms and conditions of the contest, the underlying purpose was to further a spirit of understanding among the Pan-American nations and to bring to the public the best new music written in the Americas.[1] There were also certain published conditions which each contestant was required to agree to upon entering the contest.[2]

During the years 1937, 1938 and 1939, the taxpayer, a musician and composer by profession, had composed a symphony called "Trilogy" which was unpublished and placed in his files. This composition was the result of a personal desire to compose a symphony and at the time was not done for the purpose of sale or profit. Upon learning from press releases of the attractive and extraordinary awards offered, the taxpayer took "Trilogy" from his files and entered it in the contest. On December 14, 1947, he was awarded and received the $25,000 prize. In his income tax return for that year the taxpayer included this $25,000 in his gross income. He claimed the benefits of Sec. 107 (b) of the Internal Revenue Code[3] and in so doing

1. The announced purpose was:
"The belief that good music is a force which bridges the distances and differences between the people of various nations has moved us to establish a contest among the composers of the western hemisphere with the object of searching out the most meritorious new work for full symphony orchestra by a native composer of the Americas.

"It is the plan of the Reichhold Music Award Committee first to sponsor preliminary contests in each of the twenty-one Pan-American Countries, including Canada. The winning compositions of these national series will then be entered in the competition for the grand prize. The world premiere of those works receiving the grand prize is scheduled to be played by the Detroit Symphony Orchestra, conducted by Karl Krueger.

"The broad purpose underlying this contest is the furtherance of a spirit of understanding and unity among the Nations; and also to be helpful in bringing to the public the most important new music written in the Americas."

2. These terms and conditions were in part:
"10. Each composition receiving a Cash Award, Honorable Mention or a Certificate of Merit shall remain the property of the composer except that he shall be required to grant to the Detroit Orchestra, Inc., a non-profit organization of Detroit, Michigan, all synchronization rights as applied to motion pictures and all mechanical rights as applied to phonograph recordings, electrical transcriptions and music rolls.

"11. The Detroit Orchestra, Inc., also must be granted the exclusive right to authorize the first performance for each or all of the above-named countries of compositions receiving Cash Awards, Honorable Mention or Certificates of Merit.

"12. The Detroit Orchestra, Inc., shall also be granted the exclusive right to designate the publishers of compositions winning Cash Awards, Honorable Mention or Certificates of Merit.

"13. The Detroit Symphony Orchestra plans to give at least one broadcast performance of each work receiving a Cash Award within one year from the date of the award. Each work receiving an Honorable Mention or a Certificate of Merit may be given at least one broadcast performance within one year from the date of the award."

3. 26 U.S.C.A. § 107 (b). "For the purposes of this subsection, the term 'artistic work or invention', in the case of an individual, means a literary, musical, or artistic composition of such individual or a patent or copyright covering an invention of or a literary, musical, or artistic composition of such individual, the work on which by such individual covered a period of thirty-six calendar months or more from the beginning to the completion of such composition or invention. If, in the taxable year, the gross income of any individual from a particular artistic work or invention by him is not less than 80 per centum of the gross income in respect of such artistic work or invention in the taxable year plus the gross income therefrom in previous taxable years and the twelve

computed the tax as though the $25,000 had been received ratably during the years 1937, 1938 and 1939. Later he filed a claim for refund of the tax paid as a result of the award money on the ground that it constituted a gift and was not taxable.

The Commissioner assessed a deficiency on the theory that the amount received represented taxable income and that the tax liability should have been computed under Sec. 107 (b) as though the $25,000 had been ratably received over the three year period, 1945, 1946 and 1947. The deficiency as established was paid and suit was brought for the refund. The District Court concluded that the cash prize was a gift as defined by 26 U.S.C.A. § 22 (b) (3), and should not be included as gross income under Section 22 (a) of the Internal Revenue Code.[4]

■■ Sec. 22 (a) broadly defines gross income and by its sweeping terms it is evident that Congress intended that income should be taxed comprehensively and in so doing intended to exercise to the "full measure" its constitutional power. Helvering v. Stuart, 317 U.S. 154, 169, 63 S. Ct. 140, 87 L.Ed. 154; Helvering v. Clifford, 309 U.S. 331, 334, 60 S.Ct. 554, 84 L.Ed. 788; Douglas v. Willcuts, 296 U.S. 1, 9, 56 S.Ct. 59, 80 L.Ed. 3; Irwin v. Gavit, 268 U.S. 161, 166, 45 S.Ct. 475, 69 L. Ed. 897. Under this Section all income is taxable unless specifically excluded by other provisions of the statute. Sec. 22 (b)(3), excludes gifts from the income

tax provisions but in view of the general purpose to tax all income, specific exemptions should be strictly construed. Commissioner of Internal Revenue v. Jacobson, 336 U.S. 28, 48, 69 S.Ct. 358, 93 L.Ed. 477; Helvering v. American Dental Co., 318 U.S. 322, 329, 63 S.Ct. 577, 87 L.Ed. 785.

■ The practical test which the courts have applied in cases where income has been claimed to have been a gift is to determine if the income was received gratuitously and in exchange for nothing. Helvering v. American Dental Co., supra, 318 U.S. at page 330, 63 S.Ct. 577; Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 730, 49 S.Ct. 499, 73 L.Ed. 918; Bausch's Estate v. Commissioner, 2 Cir., 186 F.2d 313, 314; Thomas v. Commissioner, 5 Cir., 135 F.2d 378, 379; Sportwear Hosiery Mills v. Commissioner, 3 Cir., 129 F.2d 376, 382; Willkie v. Commissioner, 6 Cir., 127 F.2d 953, 955, certiorari denied 317 U.S. 659, 63 S.Ct. 58, 87 L.Ed. 530. The trial court reasoned that the income was a gift because the composition was not written for the purpose of entering it in the contest and not for the purpose of receiving the prize but for the satisfaction he would derive as an artist, that the donor furnishing the prize money derived no financial benefit from the contest, and that the Detroit Orchestra, Inc., which received rights in connection with the composition did not receive the same in exchange for the prize. We think

months immediately succeeding the close of the taxable year, the tax attributable to the part of such gross income of the taxable year which is not taxable as a gain from the sale or exchange of a capital asset held for more than 6 months shall not be greater than the aggregate of the taxes attributable to such part had it been received ratably over that part of the period preceding the close of the taxable year but not more than thirty-six calendar months."

4. 26 U.S.C.A. § 22:
   "(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations,

trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

   "(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter:
   *       *       *       *       *       *
   "(3) Gifts, bequests, devises, and inheritances. The value of property acquired by gift, bequest, devise, or inheritance. * * *."

that the court's conclusion was erroneous. It may be that when the taxpayer composed the symphony his only purpose was to satisfy, as he described it, an "urge" which came upon him, and did not have in mind receiving income from it. The composition was, however, the result of his professional skill and training as a musician, and later when he read in the press of the "extraordinary awards" which were to be given to winners in this contest, it is incorrect to say that he was not offering the results of his professional skill to win prize money or that he would not accept it if his entry was declared the winner. For this purpose he selected "Trilogy" from his files and entered it in the contest. In addition to this he gave to the Detroit Orchestra, Inc., rights which are described in the entry terms. (See note 2, supra.) The fact that these rights had not previously been of value is immaterial. Although we think it was, we do not base our decision upon the narrow ground that the relinquishment of these rights was a consideration sufficient to determine the issue. We are of the opinion that when a person, such as here, submits the result of his skill and training in a contest and receives a prize, the necessary elements of a gift as contemplated by the statute are not present. It cannot be said that the prize was entirely gratuitous or received in exchange for nothing. In this case the prize was won as a result of over three years professional effort of the taxpayer. The fact that the award may come from a tax exempt organization or from a nontaxable fund is generally immaterial. The taxability of the prize or award is to be determined in accordance with the law applicable to the person receiving it. Reichhold may not have received anything tangible for giving the award but the recipient received the prize as a result of his labors just as much as though he had sold it or had been paid for its use. The award may have been made for the purpose of giving assistance to or for the promotion of a nonprofit organization or for some educational or charitable purpose, nevertheless it is income to the individual who receives it by winning a contest by or for such organization.

The trial court relied upon the case of McDermott v. Commissioner, 80 U.S.App. D.C. 176, 150 F.2d 585, as does the taxpayer here, but we think the majority of the court in that case placed too much importance on the donative intent of the nonprofit association and on the nonpecuniary motive of the taxpayer. In a proper case these may be elements to be considered in determining if the receipt of a thing of value is a gift for tax purposes, but they are not necessarily controlling factors. We do not believe that the dominant motive of a contestant for a prize such as was given in a case like this is not a hope of immediate financial gain and that he himself is not exchanging services or its product for money. Nor do we believe that we can say that one entering this sort of a contest does it purely for the advancement of art or scholarly pursuits, if so, the contestant could well refuse to accept the prize. We hold that when a person enters a contest, such as in this case, which offers a valuable award and the contestant wins and accepts that award, its value is taxable to him. Stein v. Commissioner, 14 T.C. 494.

The Commissioner in his deficiency notice determined that the income should be taxed in accordance with 26 U.S.C.A. § 107 (b), ratably over the years 1946, 1947 and 1948. The taxpayer contends that under the terms of the statute the tax should be computed as though the income was received ratably over the three years preceding the completion of the work in 1938. The District Court did not decide this point, but since it is necessary to return the case we feel we should express our views upon the meaning of this statute. Without Sec. 107 (b), all of the income would be taxable for the year in which it was received. Congress no doubt recognized that income is often received in one year as a result of services rendered over a long period of years and desired to furnish some relief to the taxpayer in such situations. Sec. 107 (b) constitutes an exception under the general rules governing the taxation of income and the taxpayer claiming its benefits must bring himself clearly within the Congressional grant:

684

Smart v. Commissioner, 2 Cir., 152 F.2d 333, certiorari denied 327 U.S. 804, 66 S. Ct. 962, 90 L.Ed. 1028; Lindstrom v. Commissioner, 9 Cir., 149 F.2d 344. The first sentence of the statute requires that the artistic work or invention from the time it was started until it was completed must extend over 36 calendar months or more before the benefits are applicable. The second or last sentence in part gives the taxpayer the privilege of prorating such .income over the three years just preceding the taxable year, the taxable year being included. The statute expressly calls for the proration of the amount received in a taxable year "over that part of the period preceding the close of the taxable year" not to exceed thirty-six months. The Commissioner's determination as to the years in which the proration should be made was correct.

Judgment is reversed and the cause remanded with instructions to enter judgment for the United States.