HERMAN JACOB FLAX, querellante y apelante, *v.* TESORERO DE PUERTO RICO, querellado y apelado.

Número 10956.
*Sometido:* 1 de marzo de 1954.   *Resuelto:* 22 de abril de 1954.

*Gutiérrez, Saldaña & Sánchez* y *C. Morales, Jr.,* abogados del apelante; *Honorable Subsecretario de Justicia Interino Francisco Espinosa* y *Manuel J. Medina Aymat, Procurador Auxiliar,* abogados del apelado.

El Juez Asociado Señor Ortiz emitió la opinión del tribunal.

Se plantea en este caso el problema de si ciertos pagos hechos a Herman Jacob Flax en virtud de una beca concedida a él por el Fondo del Seguro del Estado constituyen ingreso tributable bajo la sec. 15(*a*)(2) de la Ley de Contribuciones sobre Ingresos, que define el término "ingreso bruto" como que incluye, entre otros, "compensación por servicios personales . . . e ingresos . . . de cualquier procedencia", o si tales pagos constituyen "donaciones" bajo la sec. 15(*b*)(3) de la misma ley, que dispone que dicho término no incluye, entre otros, "el valor de propiedad adquirido por donación".

El Dr. Herman Jacob Flax, durante el año 1947, trabajaba en el Fondo del Seguro del Estado, y en el mes de octubre del mismo año le fué concedida una beca para cursar estudios especializados en la Universidad de Pennsylvania. El día 10 de septiembre de 1947 se firmó un contrato entre el Fondo del Seguro del Estado y el Dr. Flax mediante el cual el Fondo se obligó a entregar al Dr. Flax la suma de $1,100 para gastos de viaje y matrícula, suma que efectivamente recibió el Dr. Flax en el año 1947. El Fondo se comprometió a pagar además $475 mensuales para ayudar al Dr. Flax a sufragar otros gastos. Esa suma coincidía exactamente con el salario

mensual de $475 que el Dr. Flax había estado percibiendo como empleado del Fondo, y tales pagos de $475 mensuales durante los primeros ocho meses del año 1948, en virtud de la beca, son precisamente los que están en controversia en el caso de autos. En ese contrato el Dr. Flax se comprometió, y obligó, por su parte, a hacer estudios de Medicina Física durante ocho meses, y a trabajar con el Fondo del Seguro del Estado por un término de dos años luego de su graduación. Ese contrato disponía, en parte, lo siguiente:

"Primero: La segunda parte se obliga a tomar un curso de ocho meses en medicina física en la Escuela Graduada de Medicina, Cirugía Médico-Quirúrgica de la Universidad de Pennsylvania empezando en Octubre 1, 1947 . . . . . . . . . . . . . . .

"Segundo: La segunda parte se obliga a permanecer al servicio del Fondo del Seguro del Estado al completar el curso de entrenamiento en los dispensarios y clínicas de dicha institución, por un período no menor de dos años.

"Tercero: Si al completar el curso la segunda parte no regresare a su empleo según lo acordado, o si . . . renunciare o abandonare su empleo. . . .quedará obligado. . .a reembolsar a la primera parte el total de la cantidad recibida . . . . . . . . . . . . ."

La autoridad del Fondo para otorgar la beca de referencia se basaba en el art. 6 de la Ley núm. 388, aprobada el 22 de abril de 1946, que dispone lo siguiente:

"El Administrador del Fondo del Seguro del Estado queda facultado para nombrar, mediante contrato, el personal técnico y administrativo y auxiliares necesarios, a los fines de organizar los servicios y operar el Hospital de Medicina y Cirugía Industrial y de Rehabilitación Física, así como fijar sus salarios. Tendrá también facultad para, con cargo al Fondo del Seguro del Estado, crear becas por el tiempo que sea necesario, destinadas a la preparación del personal técnico y administrativo que sea necesario, sujeto ello a la aprobación del Consejo Ejecutivo."

. En virtud del contrato ya mencionado, el Dr. Flax se trasladó a los Estados Unidos, a fines del año 1947, y estuvo cursando estudios hasta el mes de junio de 1948, en que regresó a Puerto Rico, donde continuó desempeñando su cargo en el

Fondo del Seguro del Estado, con la misma compensación mensual de $475, hasta el día 20 de julio de 1948, en que firmó un nuevo contrato en virtud del cual empezó a percibir un salario anual de $6,300.

El Dr. Flax rindió su Declaración Individual de Ingresos para el año 1948. El Tesorero de Puerto Rico notificó al Dr. Flax, como contribuyente, una deficiencia de $3,800, en virtud de los pagos recibidos de $475 mensuales durante los ocho meses de estudios mencionados en la beca. Finalmente, y después de los trámites correspondientes, la Sala de San Juan del Tribunal Superior dictó una sentencia sosteniendo la determinación de deficiencias del Secretario de Hacienda para el año 1948. El Dr. Flax ha apelado de esa sentencia ante este Tribunal y alega, esencialmente, que tales pagos de $475 mensuales durante la vigencia de la beca constituían donaciones, y no ingreso tributable.

█ Pagos hechos como recompensa o compensación por servicios ya presentados, y no en virtud de mera liberalidad, generosidad espontánea, buena voluntad, estimación, benevolencia, afecto, admiración o caridad, constituyen ingreso tributable y no donaciones exentas del pago del impuesto. *Tesorero* v. *Tribunal de Contribuciones y Franco*, 73 D.P.R. 890; *Robertson* v. *United States*, 343 U. S. 711, resuelto en junio de 1952; *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716; *Carragan* v. *Commissioner*, 197 F.2d 246, resuelto en mayo de 1952, indicando el Juez Frank que fueron los servicios los que motivaron los pagos; *Smith* v. *Manning*, 189 F.2d 345; *Bausch's Estate* v. *Comm.*, 186 F.2d 313. Véanse además los casos de *Tesorero* v. *Tribunal de Contribuciones, y Viuda de Obén*, 70 D.P.R. 493 y *Bogardus* v. *Commissioner*, 302 U. S. 34, en que, de acuerdo con sus hechos especiales, no aplicables al caso de autos, se resolvió que se trataba de una donación y no de un ingreso tributable, pero se aceptó la definición general que hemos señalado.

■ En el caso de autos la beca no se concedió como compensación por servicios anteriores ni por servicios a ser prestados durante la vigencia de la beca. Pero ella fué otorgada en consideración a servicios a ser prestados en el futuro, después de la terminación del curso de estudios objeto de la beca. Constituye un ingreso tributable, y no una donación, un pago previo por servicios futuros, especialmente cuando media la relación de patrono y empleado entre el que hace el pago y el que lo recibe y especialmente cuando, como en el caso de autos, el empleado se ha obligado contractualmente a prestar sus servicios en el futuro en consideración a tal pago anterior. No se trata entonces de unos pagos hechos por motivos puramente altruístas, de benevolencia y generosidad, sino que más bien se trata de pagos hechos en anticipación de beneficios futuros para el pagador. En el caso de *Tesorero* v. *Tribunal de Contribuciones, y Viuda de Obén*, supra, aunque se llega a la conclusión de que allí se trataba de una donación, en virtud de hechos distintos a los del caso de autos, se cita, no obstante, a Mertens, *Law of Federal Income Taxation*, al efecto de que una compensación por servicios a ser prestados en el futuro constituye un ingreso tributable y no una donación. 1 Mertens 387. En el caso de *Bogardus* v. *Commissioner*, supra, aunque también se llegó a la conclusión de que había mediado una donación exenta de tributo, en virtud de hechos distintos a los del caso de autos, se indica que pagos hechos en virtud de servicios a ser prestados en el futuro constituyen una compensación tributable y no una donación. Se indicó además que, en el caso de Bogardus, el pago constituía una donación porque "faltaba totalmente la fuerza coercitiva de un deber moral o legal, así como el incentivo de beneficios anticipados de clase alguna, a no ser la satisfacción que surge del cumplimiento de un acto generoso". *Bogardus* v. *Commissioner*, supra, a las páginas 40, 41. En el propio caso de Bogardus se distingue el caso de *Old Colony Trust Co.* v. *Commissioner*, supra, diciéndose lo siguiente, a la pág. 40:

"En ese caso (*Old Colony Trust Co.*) un patrono había pagado la contribución sobre ingresos impuesta sobre el salario de un empleado. El empleado había empezado a cumplir sus deberes para ese año bajo un convenio expreso al efecto. Evidentemente, tal pago, así acordado por anticipado, era en consideración de servicios a ser prestados, y no podía constituir en forma alguna una donación. Era parte de la compensación del empleado, y así resolvió la corte."

La misma doctrina de que pagos por futuros servicios son tributables, surge de los casos de *Davis* v. *Commissioner*, 81 F.2d 137 y *McCoy–Brandt Mach. Co.*, 8 B.T.A. 909. Véanse además 36 Mich. L. Rev. 1425, 1426 y Magill, *Taxable Income*, pág. 402, 403 (pagos hechos por servicios especiales o para asegurar que el empleado permanezca en el servicio, son tributables).

▋ Como punto de partida para un análisis más cabal del problema planteado, no podemos olvidar que los pagos recibidos por el contribuyente y apelante caen dentro de la definición general y amplia del término "ingreso bruto", bajo la sec. 15 (*a*) (2) de la ley; que las donaciones no tributables a que hace referencia la sec. 15 (*b*) (3) constituyen una excepción específica a la amplitud del concepto de "ingreso bruto"; que en vista de la generalidad de la definición del término "ingreso bruto" es evidente que el legislador tuvo la intención de imponer tributos sobre ingresos en forma amplia, al disponer que todo ingreso es tributable a menos que esté específicamente excluído por otras disposiciones del estatuto, y que, por lo tanto, las exenciones específicas deben ser estrictamente interpretadas. *Commissioner of Internal Revenue* v. *Jacobson*, 336 U. S. 48; *Helvering* v. *American Dental Co.*, 318 U. S. 322; *United States Robertson*, 190 F.2d 680, 682, confirmado en *Robertson* v. *United States*, supra. El primer criterio, o primera piedra de toque, debe referirse a la investigación de si determinado ingreso cae dentro de la definición general de "ingreso bruto", y, en segundo término, debe comprobarse, entonces, si el ingreso cae dentro de la excep-

ción específica relativa a las donaciones. *Commissioner of Internal Revenue* v. *Jacobson*, supra. El peso de la prueba debe recaer sobre el contribuyente para demostrar que se trata de una donación y no de un ingreso tributable. *Botchford* v. *Comm.*, 81 F.2d 914.

■■ Varios son los factores que se han sugerido para una decisión de si determinado ingreso constituye un pago tributable o una donación. Véanse, Magill, *Taxable Income*, pág. 393 *et seq.*, edición revisada; 2 Tax L. Rev. 85 *et seq.*; 29 *Taxes* 533 (1951); 33 Ill. L. Rev. 371; 36 Mich. L. Rev. 1425; 110 A.L.R. 285, 286; 1 Mertens 384 *et seq.*, sec. 8.08. Uno de ellos se refiere a la ausencia o existencia de causa o consideración, a tono con la definición de "causa" prevaleciente en el sistema legal de los Estados Unidos. En el caso de *Noel* v. *Parrott*, 15 F.2d 669 (citado con aprobación en *Old Colony Trust Co.* v. *Commissioner*, supra, y en *Helvering* v. *American Dental Co.*, supra), se indica que una donación es una transferencia voluntaria de bienes, sin causa o consideración, indicándose que las donaciones generalmente se derivan de la generosidad del donante, y, de existir dudas sobre la naturaleza de la transferencia, la ausencia de tal motivo constituye una circunstancia pertinente. Véase, además, *Schumacher* v. *United States*, 55 F.2d 1007. Una donación equivale a dar algo a cambio de nada. *Commissioner* v. *Jacobson*, supra; *United States* v. *Robertson*, supra. Un criterio negativo se refiere al hecho de si los pagos no se hubieran hecho a no haber sido por los servicios. *Bickford* v. *Commissioner*, 34 B.T.A. 461. Desde el punto de vista ya indicado, los pagos en controversia en el caso de autos estuvieron basados en una "causa" suficiente, esto es, la prestación de servicios en el futuro de parte del empleado y la obtención anticipada de beneficios en el futuro de parte del patrono, todo ello en virtud de una obligación contractual. No se trata del pago de algo a cambio de nada, o a base de motivos de puro altruísmo y generosidad. Se infiere razo-

nablemente que los pagos no se hubieran hecho a no haber sido por el compromiso de prestar servicios en el futuro.

La existencia de causa o consideración no es un factor exclusivo. La resolución del dilema depende en gran parte de la naturaleza de la intención del pagador, si fué la intención la de hacer una donación o la de hacer un pago a cambio de un "quid pro quo", deduciéndose tal intención de las circunstancias del caso. *Bogardus* v. *Commissioner*, supra; *Fisher* v. *Commissioner*, 59 F.2d 192. Se trataría de una donación cuando la intención no sea la de obtener algún valor económico o material a cambio del pago, o cuando el pago se hace solamente por motivos de afecto personal o filantropía. *Bass* v. *Hawley*, 62 F.2d 721. Los hechos en este caso demuestran una intención contraria a la de hacer una donación. *Cf. Weagant* v. *Bowers*, 57 F.2d 679. De la propia ley que autorizó al Administrador del Fondo del Seguro del Estado a conceder becas surge que el propósito de las becas era el de preparar el personal técnico y administrativo que fuese necesario para organizar los servicios y operar ciertos hospitales. No era la intención del gobierno el hacer pagos por motivos generosos de pura liberalidad. Del contrato otorgado con el Dr. Flax surge que los pagos se hicieron a cambio del compromiso de este último de prestar servicios en el futuro. Era el propósito el que el gobierno obtuviese beneficios valiosos en virtud del entrenamiento especializado de algunos de sus empleados.

Otro factor de singular importancia se refiere a la naturaleza de la relación entre el pagador y el beneficiario de los pagos. Si media la relación de patrono y empleado, debe presumirse que los pagos constituyen una compensación tributable por servicios, y no una donación. *Carragan* v. *Commissioner of Internal Revenue*, supra; *Smith* v. *Manning*, supra; *Poorman* v. *Commissioner*, 131 F.2d 946; *Willkie* v. *Comm.*, 127 F.2d 953, certiorari denegado en 317 U. S. 659.

Tal presunción no ha sido rebatida en este caso.

■ Si un pago surge de un contrato o se refiere al cumplimiento de obligaciones contractuales, tal como ocurre en el caso de autos, ello tiende poderosamente a excluir la existencia de una donación. *Robertson* v. *United States,* 343 U. S. 711.

■ Otra consideración importante surge de la relación o comparación que pueda establecerse entre el pago en controversia y la cuantía del salario que había sido pagado al empleado. Si la compensación en litigio resulta ser notablemente en exceso del salario usual anterior, ello es evidencia de que el pago constituye una donación, pero si el pago corresponde razonablemente al salario anterior y al valor de los servicios, ello fortalece el criterio de que se trata de una compensación tributable. Magill, ob. cit., pág. 400; *Landon* v. *Commissioner*, 16 B.T.A. 907; *Ringler & Co.* v. *Commissioner*, 10 B.T.A. 1134. En el caso de autos los pagos mensuales no solamente exhibían la característica de proporcionalidad con el salario mensual que se había estado recibiendo, sino que eran exactamente iguales a tales salarios mensuales. ([1])

No erró el tribunal sentenciador al resolver que las sumas aquí envueltas constituían ingreso tributable y no donaciones. Por lo tanto, *debe confirmarse la sentencia apelada.*

El Juez Presidente Sr. Snyder no intervino.

---

([1]) Naturalmente, al referirnos a donaciones en este caso no seguimos la significación de ese concepto bajo nuestro Código Civil sino que utilizamos su significación bajo las leyes de contribuciones sobre ingresos.