Allen KAISER, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 56–C–162.

United States District Court
E. D. Wisconsin.

Feb. 19, 1958.

Max Raskin, Milwaukee, Wis., Harold Cranefield, Detroit, Mich., William F. Quick, Milwaukee, Wis., of counsel, for plaintiff.

Charles K. Rice, Asst. Atty. Gen., James P. Garland and Leland T. Atherton, Attys., Dept. of Justice, Washington, D. C., Edward G. Minor, U. S. Atty., and Francis L. McElligott, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

GRUBB, District Judge.

The case is before the court on the government's motion, under Rule 50(b), F.R.Civ.P., 28 U.S.C.A., to set aside the verdict of the jury and the judgment entered thereon and to enter judgment in accordance with the government's previous motion for directed verdict; or, in the alternative, if the motion to set aside be denied, for a new trial.

The action was brought for refund of taxes allegedly erroneously collected. The only item in issue is an amount of $565.54 received during 1954 by plaintiff as strike benefits from the United Automobile, Aircraft and Agricultural Implement Workers of America, hereinafter referred to as the U.A.W. If such amount constitutes a nontaxable gift, plaintiff is entitled to a refund. If it represents taxable income to the plaintiff, the tax in respect thereof was correctly collected and plaintiff can have no refund.

Counsel for both parties informed the court at the time of the pretrial conference that this was a case of first impression and that there were an unbelievable number of men who had paid a similar tax under protest where a similar situation existed and who were awaiting the outcome of the trial in this case. At the close of plaintiff's case, defendant moved for a directed verdict, and a similar motion was made at the close of all the evidence. On both occasions, the court denied the motion without prejudice. It was apparent that if this were to be a test case, it would be reviewed by appellate courts, regardless of its outcome, and the court felt that there should be a complete record so that no new trial would be necessary if the appellate court reversed.

The issue was tried before a jury and a special verdict of one question was submitted:

"Were the amounts received by plaintiff, Allen Kaiser, from May 14th to December 31st, 1954, from United Automobile, Aircraft and Agricultural Implement Workers of America, a gift?"

To this question the jury answered "yes". Judgment for plaintiff was entered on the verdict; Rule 58, F.R.Civ.P.

Stipulations filed with the court before trial set forth the following facts:

At the time he paid the tax in question, Allen Kaiser was a resident of Sheboygan, Wisconsin, and in 1954 and prior thereto was an employee of the Kohler Company at Sheboygan, Wisconsin. On March 4, 1954 a strike against the Kohler Company was authorized by the members of Local Union 833, approved by the U.A.W., which strike became effective on April 5, 1954. Kaiser was not present at the meeting of the Union when the strike vote was taken. He did not become a member of the Union until August 19, 1954. The decision to become a member of the Union was voluntarily arrived at by Kaiser. He was on strike at the time he was admitted to membership in the Union. He did not pay any initiation fee or dues because he was on strike.

Beginning with May 4, 1954, before he was a member of the Union, Kaiser received strike benefit payments from the U.A.W. It granted strike benefits to nonmembers who participated in the strike if they did not have sufficient income to purchase food or to meet the emergency situation. The Union treated non-members on the same basis as members, but non-members, as well as members, had to be strikers before they could receive assistance from the Union. A distinction was made by the Union between applicants in granting strike benefits to them, depending upon their marital status and number of dependents.

At the time of the declaration of the Kohler strike the U.A.W. had $9,141,488 in its strike fund, and Local Union 833 had in its strike fund $63,677.88, which latter amount was transferred to the U.A.W. in 1954 and was set up in a special bank account to deal with strike expenditures and strike needs of Kohler workers.

The Constitution of the U.A.W. contained the following provisions:

"Article 12, Section 1. The International Executive Board shall execute the instructions of the International Convention and shall be the highest authority of the International Union between Conventions, subject to the provisions of this Constitution, and shall have the power to authorize strikes, issue charters and punish all subordinate bodies for violation of this Constitution.

"Article 12, Section 15. If and when a strike has been approved by the International Executive Board, it shall be the duty of the International Executive Board to render all financial assistance to the members on strike consistent with the resources and responsibilities of the International Union.

"Article 16, Section 4. * * * Five cents (.05) of each month's dues payment must be laid aside by the Local Union as a special fund to be used in case of strike or lockout * * *

"Article 16, Section 11. All Local Unions shall pay to the International Union a per capita tax of one dollar and twenty-five cents ($1.25) per month per dues-paying member, twenty-five cents (.25) of which shall be set aside in a special fund as the International Union Strike Fund, to be drawn upon exclusively for the purpose of aiding Local Unions engaged in authorized strikes and in cases of lockout, and for that purpose only, and then only upon a two-thirds vote of the International Executive Board. * * *.

"Article 16, Section 13. All per capita taxes, and all other monies collected for the International Union shall be transmitted to the International Secretary-Treasurer by the twentieth of each month following collection. All such per capita taxes and other monies are strictly the property of the International Union and in no case shall any part thereof be used by Local Unions, except upon permission of the International Executive Board.

"Article 49, Section 1. * * * If, as a result of this decision, a strike vote is decided upon, the Local Union Executive Board shall notify all members, and it shall re-

quire· a two-thirds vote by secret ballot of those voting to declare a strike. Only members in good standing shall be entitled to vote on the question of declaring a strike.

"Article 49, Section 5. Before a strike shall be called off, a special meeting of the Local Union shall be called for that purpose, and it shall require a majority vote by secret ballot of all members present to decide the question either way. Wherever the International Executive Board decides that it is unwise to longer continue an existing strike, it will order all members of Local Unions who have ceased work in connection therewith to resume work and thereupon and thereafter all assistance from the International Union shall cease.

"Article 49, Section 6. Any Local Union engaging in a strike which is called in violation of this Constitution and without authorization of the International President and/or the International Executive Board shall have no claim for financial or organizational assistance from the International Union or any affiliated Local Union."

The testimony at trial showed that strikers were not required to serve on the picket lines, help in the soup kitchen, or render like services in order to receive strike benefits. They were encouraged to do so and were regarded by the Union as having a moral obligation to do so. The amount of $565.54 received by Kaiser as strike benefits was in the form of food, clothing, and payments by the Union on his room rent.

There was testimony that on occasion the Union had used money from this strike fund for flood relief and other charitable purposes. This usage is directly contrary to the express provisions of Article 16, Section 11 of the Constitution of the International Union quoted above.

█ Two of the arguments advanced by the government in support of its mo-

tion for a new trial have little weight: First, it is alleged that error was committed because the court did not specifically ask the jury, in the verdict, whether the Union *intended* to make a gift of the $565.54 to Kaiser. Accordingly, objection is made to the verdict used by the court which asked only whether the amounts received by Kaiser were a gift. To this point it is but necessary to answer that the proposed verdict submitted by the government to the court on the morning of trial consisted of a single question which asked whether "the sum * * * received by [Kaiser] from the Union * * * was a gift;" to point out that the government itself proposed an alteration in the verdict which was actually used and expressed satisfaction in the final form of the verdict when the court accepted the alteration; and to note that at no time did the government request the court to submit a separate question on the specific item of intent. The court is satisfied that the verdict used was the proper one for this case. The matter of intention of the Union was thoroughly covered in the instructions to the jury.

█ The government also claims that the court's instructions were erroneous in that they included an instruction to the effect that the absence or presence of consideration in the legal sense is not the controlling factor in cases involving the question whether voluntary payment for services is compensation or income, but the sole question in that respect is the intention with which the payment was made. Also claimed to be erroneous is that part of the instructions which stated that whether the receipts were gifts is primarily a question of fact to be resolved under the peculiar circumstances of this case, and that in determining whether the payments were gifts, the intention with which the payments, however voluntary, were made, rather than the presence or absence of consideration therefor, controls. To these objections it may be answered that when the context is considered it is clear that the court was not instructing the jury to disregard

the presence of legal consideration, if it found such to exist, but rather the court, in accordance with the law, was instructing the jury that a voluntary payment made without the presence of legal consideration may nonetheless be taxable income rather than a gift if the intent of the payor was to confer a reward for some service or benefit to him. Such an instruction was clearly to the benefit of the government. Examination of the instructions as a whole reveals that the court repeatedly instructed the jury that if the payments were made by the Union in exchange or return for something the Union wanted from Kaiser, the jury must find the $565.54 to be taxable income. The court told the jury that before it could find the strike benefits to be a gift, it must find that the amount was not paid—

As compensation for refraining from labor. (Tr. 141)

Under any legal or moral obligation. (Tr. 142)

As compensation for services. (Tr. 143)

As a remuneration for something the Union wanted done or omitted. (Tr. 143)

As anything due to the plaintiff. (Tr. 143)

In expectation of any return. (Tr. 143)

However, the government's motion is more soundly based, insofar as it rests on the contention that under the evidence of the case, "viewing the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to plaintiff" [Shaw v. Hines Lumber Co.

7 Cir., 1957, 249 F.2d 434, 439], as a matter of law the strike benefits constituted taxable income and not a gift.

■ The evidence in this case is not disputed. The question basically is one of interpretation of the statutes. Findings are held to be subject to review on this question. Bogardus v. Commissioner, 1937, 302 U.S. 34, 38–39, 58 S.Ct. 61, 82 L.Ed. 32; Willkie v. Commissioner, 6 Cir., 1942, 127 F.2d 953, 955; certiorari denied 317 U.S. 659, 63 S.Ct. 58, 87 L.Ed. 530.

■■ The 1954 Code sections applicable to the question are sections 61(a) and 102(a), 26 U.S.C.A. §§ 61(a), 102 (a). Section 61(a) defines gross income as "all income from whatever source derived." Section 102(a) provides that "gross income does not include the value of property acquired by gift * * *" Thus, gross income is defined in sweeping terms and should be broadly construed in accordance with an obvious purpose to tax income comprehensively.[1] The definition is very comprehensive,[2] intended to be far-reaching, and indicates the purpose of Congress to use the full measure of its taxing power.[3] Construction should be liberal and consonant with that purpose. On the other hand, provisions granting exemption from tax, such as 102(a), are to be construed strictly and with restraint.[4] Words of exemption or exclusion are not to be extended beyond their plain meaning,[5] and exemptions cannot rest upon implication.[6] Specifically, section 102(a), exempting gifts from income tax, should not be construed liberally in favor of one claiming the exemption, but rather in

1. Commissioner of Internal Revenue v. Jacobson, 1949, 336 U.S. 28, 48–49, 69 S.Ct. 358, 93 L.Ed. 477.

2. Commissioner of Internal Revenue v. Lo Bue, 1956, 351 U.S. 243, 246–247, 76 S.Ct. 800, 100 L.Ed. 1142; rehearing denied 352 U.S. 859, 77 S.Ct. 21, 1 L.Ed. 2d 69.

3. Commissioner of Internal Revenue v. Glenshaw Glass Co., 1955, 348 U.S. 426, 429–430, 75 S.Ct. 473, 99 L.Ed. 483; rehearing denied 349 U.S. 925, 75

S.Ct. 657, 99 L.Ed. 1256; Helvering v. Clifford, 1940, 309 U.S. 331, 334, 60 S. Ct. 554, 84 L.Ed. 788.

4. Commissioner of Internal Revenue v. Jacobson, supra n. 1, 336 U.S. 48–49, 69 S.Ct. 368–369.

5. Helvering v. American Dental Co., 1942, 318 U.S. 322, 329, 63 S.Ct. 577, 87 L. Ed. 785.

6. U. S. Trust Co. v. Helvering, 1939, 307 U.S. 57, 60, 59 S.Ct. 692, 83 L.Ed. 1104.

such way as to give section 61(a) its proper effect.

As previously indicated, the material facts in this case are all either stipulated or supported by uncontroverted testimony. It is not disputed that the strike benefits were paid by the International Union on the basis of need and irrespective of membership in the Union. These facts, standing alone, indicate a gift. But it is also undisputed that the strike was being conducted with the approval of the International Executive Board, that Article 12, Section 15 of the International Union Constitution made it "the *duty* of the International Executive Board to render all financial assistance to the members on strike consistent with the resources and responsibilities of the International Union" (emphasis supplied), and that it was required of every person to whom benefits were paid that he join the strike and continue to remain on strike. If plaintiff had been a member of the Union before the strike and had paid his dues, deductible by him and not taxable as income to the Union, he would certainly have had a moral right to strike benefits and might well have been able to enforce that right if the Union arbitrarily denied benefits to him. In such a case an even more clear-cut question would be presented.

■ A gift, within the meaning of section 102(a), is the receipt of financial advantages gratuitously,[7] is made from a detached and disinterested generosity,[8] without the incentive of anticipated benefit of any kind beyond satisfaction of doing a generous act,[9] without consideration,[10] for that only is a gift which is purely such,[11] without the compulsion of moral or legal duty,[12] and is basically something for nothing.[13] The voluntary character of the payment is not determinative, for a payment may constitute income to the recipient though made to him without legal obligation.[14]

■ Applying these rules of law and construction to the undisputed evidentiary facts, it is the opinion of this court that as a matter of law the payments to Kaiser constituted income taxable to him and cannot be brought within the gift exclusion. The payments were made to its members by the International Union under a moral obligation imposed by its Constitution. They were made to all strikers pursuant to a plan whereby something of value to the Union was exacted in return from the recipient, namely, his continued participation in the strike. Either reason is sufficient to prevent the payments from being a gift.

■ This conclusion is also demanded by the administrative treatment of strike benefits. In 1920, by O.D. 552, C.B. No. 2, p. 73, Internal Revenue issued and promulgated a ruling which dealt with the point in issue in this case:

"Benefits received from a labor union by an individual member while on strike are to be included in his gross income for the year during

7. Helvering v. American Dental Co., supra note 5, 318 U.S. 329, 63 S.Ct. 577; United States v. Burdick, 3 Cir., 1954, 214 F.2d 768, 771.

8. Commissioner of Internal Revenue v. Lo Bue, supra note 2, 351 U.S. 246–247, 76 S.Ct. 800.

9. Bogardus v. Commissioner, 1937, 302 U.S. 34, 41, 58 S.Ct. 61, 82 L.Ed. 32.

10. Webber v. Commissioner, 10 Cir., 1955, 219 F.2d 834, 836; Noel v. Parrott, 4 Cir., 1926, 15 F.2d 669, 671; certiorari denied 273 U.S. 754, 47 S.Ct. 457, 71 L.Ed. 875; Schumacher v. United States, 1932, 55 F.2d 1007, 1011, 74 Ct.Cl. 720.

11. Bass v. Hawley, 5 Cir., 1933, 62 F.2d 721, 723.

12. Bogardus v. Commissioner, supra n. 9, 302, U.S. 41, 58 S.Ct. 61.

13. Commissioner of Internal Revenue v. Lo Bue, supra n. 2, 351 U.S. 247, 76 S. Ct. 800; Commissioner of Internal Revenue v. Jacobson, supra, n. 1, 336 U.S. 50, 69 S.Ct. 369; Helvering v. American Dental Co., supra, n. 5, 318 U.S. 331, 63 S.Ct. 577.

14. Old Colony Trust Co. v. Commissioner, 1929, 279 U.S. 716, 730, 49 S.Ct. 499, 73 L.Ed. 918; United States v. Burdick, supra n. 7, 214 F.2d 771.

which received, there being no provision of law exempting such income from taxation."

For thirty-eight years, except as reaffirmed by Rev.Rul. 57–1, I.R.B. 1957–1, 10, this ruling has remained unchanged through repeated Congressional re-enactments of the relevant income tax sections (now 61(a) and 102(a) of the 1954 Code.)[15] Thus, the administrative interpretation and practice must be said to have always been seasoned and settled, uniform and consistent. Considering the length of time the unvaried ruling and practice has been in effect, the non-technical nature of the question, and the importance of the issue in both the tax and labor fields, it must be concluded that Congress was aware of the administrative interpretation when it repeatedly re-enacted the sections. Under such circumstances, the administrative interpretation is not only entitled to great weight, but must be held to have received Congressional approval and to have assumed the force and effect of law. Corn Products Co. v. Commissioner, 1955, 350 U.S. 46, 52–53, 76 S.Ct. 20, 100 L.Ed. 29; rehearing denied 350 U.S. 943, 76 S.Ct. 297, 100 L.Ed. 823; United States v. Leslie Salt Co., 1955, 350 U.S. 383, 389, 76 S.Ct. 416, 100 L.Ed. 441; Commissioner of Internal Revenue v. South Texas Lumber Co., 1948, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831; rehearing denied 334 U.S. 813, 68 S.Ct. 1014, 92 L.Ed. 1744; Crane v. Commissioner, 1947, 331 U.S. 1, 7–8, 67 S.Ct. 1047, 91 L.Ed. 1301; Commissioner of Internal Revenue v. Flowers, 1946, 326 U.S. 465, 469, 66 S.Ct. 250, 90 L.Ed. 203; Boehm v. Commissioner, 1945, 326 U.S. 287, 291–292, 66 S.Ct. 120, 90 L.Ed. 78; White v. United States, 1938, 305 U.S. 281, 291, 59 S.Ct. 179, 83 L.Ed. 172; Helvering v. Winmill, 1938, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52; Zillmer v. United States, 7 Cir., 1956, 233 F.2d 912, 914; Parker Pen Co. v. O'Day, 7 Cir., 1956, 234 F.2d 607, 609–610; Gunn v. Dallman, 7 Cir., 1948, 171 F.2d 36, 38;

certiorari denied 336 U.S. 937, 69 S.Ct. 747, 93 L.Ed. 1095.

Nor is a distinction to be made, looking to this early administrative ruling, between strike benefit payments to members and, as occasionally happens, to non-members. As pointed out, in neither case can the payments be gifts.

" * * * The determination that strike benefit payments are includible in gross income is not affected by * * * the fact that such payments or distributions are also made to persons who are not members of the union. * * * " Rev. Rul. 57–1, I.R.B. 1957–1, 10.

The court is aware of the line of decisions holding that when the Internal Revenue Service makes a ruling on an obscure question, on a question that does not recur repeatedly, where a construction is neither uniform, general, nor of long standing, it is not entitled to substantial weight. The basis of that rule is that it is not to be presumed that Congress follows all the rulings of the Internal Revenue Service. This case involves a situation where a ruling is not only of long standing but concerns, and has over the years, thousands and thousands of men. It is a matter of great public interest. The court is of the opinion that it falls within the type situation where repeated congressional re-enactments of the tax sections, without change, should be held to be an acquiescence in the administrative interpretation and practice.

One would also be loathe to believe that Congress intended that each one of these cases, of which there are thousands, should be tried as a question of fact. If such were the situation, the results would not be uniform, the cost would be prohibitive both to the taxpayer and the government, court calendars would be flooded with these cases, the government would have to vastly increase its staff of attorneys, and chaos and inequities would be the result. The court believes that if such a situation is

---

15. Commissioner of Internal Revenue v. Jacobson, supra n. 1, 336 U.S. 48–40, 69 S.Ct. 368–369.

**872**

to be brought about, it should be brought about by Congress. It is inconceivable that Congress did not intend the law to be uniform.

■ There is no ground for believing that it has suddenly become the intent of Congress, without any official act or indication, to reverse the situation that has existed for almost forty years and now treat strike benefits as tax-free gifts. It is not the province of the courts to legislate in tax matters either directly, by their own pronouncements, or indirectly, but equally effectively, by allowing jury verdicts to stand which are contrary to law. To do so is to pervert the judicial power. Heiner v. Donnan, 1932, 285 U.S. 312, 331, 52 S.Ct. 358, 76 L.Ed. 772.

For the foregoing reasons, the court believes that no jury issue was presented and that the government was entitled to have its motion for directed verdict granted.

Counsel for the United States are directed to prepare an appropriate order, submitting it to counsel for the plaintiff for approval as to form only.