**Ralph A. WILSON and Joanne B. Wilson, his wife**

v.

**UNITED STATES of America.**

**Civ. A. No. 2785.**

United States District Court
D. New Hampshire.

Nov. 6, 1968.

Clyde R. Coolidge, Cooper, Hall & Walker, Rochester, N. H., for plaintiffs.

Louis M. Janelle, U. S. Atty., Concord, N. H., Moshe Schuldinger, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## DECISION

BOWNES, District Judge.

This is an action against the United States of America for the recovery of internal-revenue taxes in the amount of $74.96, alleged to have been erroneously and illegally assessed against, and collected from the plaintiffs for the year 1965. Jurisdiction of this court is premised on Title 28, United States Code § 1346(a) (1). The following question is submitted for our decision:

> Whether the reimbursed meal expenses, received by Ralph A. Wilson from his employer, are excludable from his gross income for the year 1965 pursuant to the provisions of Section 119 of the Internal Revenue Code of 1954.

## STIPULATED FACTS

The plaintiffs are presently, and were during the year 1965, married and residing in Lebanon, New Hampshire. In that year, the taxpayer [1] was employed by the State of New Hampshire, Division of State Police, in the capacity of a uniformed trooper, and received from the State, as reimbursement for the actual cost of meals eaten while on duty, the sum of $394.55. These payments were made in accordance with the "Travel Rules and Regulations of the State of New Hampshire, October 1965" issued by the Department of Administration and Control. The sum of $394.55 was not reported on the plaintiffs' 1965 joint federal income tax return which was filed with the District Director of Internal Revenue in Portsmouth, New Hampshire. On January 6, 1967, the District Director assessed a deficiency in income tax in the amount of $74.96 resulting from the inclusion in taxable income of $394.55. The assessed tax and interest thereon ($2.87) were paid by the plaintiffs on December 5, 1966, (tax) and January 17, 1967, (interest). On December 5, 1966, the plaintiffs filed a timely claim for refund of the tax being

---

1. All references to "taxpayer" in this opinion are to Ralph A. Wilson. Joanne, his wife, is a party here only by reason of the filing of a joint return.

paid on that date. A statutory notice of disallowance of that claim was mailed to the taxpayer on March 2, 1967. On June 13, 1967, the plaintiffs commenced this action.

### FINDINGS OF FACT

Based upon the submitted depositions and the court hearing, the following additional facts are found:

The employing agency, the Division of State Police of the State of New Hampshire, has a total complement of approximately one hundred and thirty-eight men, of which some one hundred and fifteen men are uniformed, and the remainder serve in communications and plain-clothes divisions. The uniformed divisions are divided into seven troops ("A" through "F" and the "Turnpike Patrol"), and the entire Division of State Police is organized along military lines. Deposition of Major John T. Conti, 8–10 (hereinafter referred to as Conti).

In general, the jurisdiction of the Division, though statewide, is limited to state highways, and to townships with a population of three thousand or less which do not have a regular organized police force of their own. Additionally, when requested by local authorities or by the Attorney General, the State Police perform investigatory duties in the larger townships and cities. Deposition of Ralph A. Wilson, 4–5 (hereinafter referred to as Wilson); Conti, 21–23.

Additional organizational practices and procedures indicate that uniforms, weapons, and patrol cars equipped with radios are furnished to the troopers by the State of New Hampshire. Wilson, 6, 8, 9. Troopers assigned to a particular troop area work nine-hour shifts, which extend from 7:00 A.M. to 4:00 P.M.; 9:00 A.M. to 6:00 P.M.; 1:00 P.M. to 10:00 P.M.; 3:00 P.M. to midnight; 4:00 A.M. to 1:00 P.M.; and, 6:00 A.M. to 3:00 P.M. The troopers are also "on call" twenty-four hours a day, seven days a week. Wilson, 5–6.

One meal break is generally permitted during the nine-hour shift.[2] Conti, 15. There is no prescribed meal-time nor is there a specified limitation upon the duration of the meal break. Wilson, 6–7. The monies in dispute in this action are the 1965 reimbursements to the taxpayer for the cost of meals purchased by him during regular nine-hour shifts. At the hearing, counsel for both parties indicated that this action is, in reality, a representative action on behalf of all New Hampshire State Police Troopers.[3]

Certain restrictions and conditions pertaining to the contested reimbursed meal expenses must be enumerated. The applicable provisions of the State of New Hampshire Department of Administration and Control "Revised Travel Rules and Regulations, October 1965," in accordance with which the contested payments were made, are reported below.[4]

> No expense may be charged for travel which is not in fact performed.
>
> \*    \*    \*    \*    \*
>
> #### 4. MEALS
> (a) Include reimbursement for meals purchased, or as otherwise authorized, including tax and gratuities not to exceed the following:
> (b) In-state travel: (10 or more miles from official headquarters) morning meal $1.00; noon meal $1.50; and evening meal $2.50—maximum $5.00 per day.
>
> \*    \*    \*    \*    \*
>
> (d) Any meals purchased exceeding these limits or maximums must be attested by sales slips or other approved certification attached. No reimbursement shall exceed cost of meals, including tax and gratuities. Hotels

---

2. The deposition of Major Conti (at page 15) indicates, by inference, that occasionally, depending upon the particular workshift, the number of meals may exceed one. This is noted simply to eliminate any possible confusion or ambiguity in our use of "generally" in the text, supra. See also Wilson, at 10.

3. It should be noted that the State of New Hampshire reimburses *all* state employees for the cost of meals incurred while on travel on official business. The instant action, and our decision, is however, restricted, in its declaratory effect, to payments received by New Hampshire State Troopers only.

4. \*   \*   \*

    2. GENERAL PROVISIONS
  (a.) Only travel actually performed in the course of state duties is allowable.

Certain long-standing oral orders of the State Police, in effect in 1965, are also pertinent, and we list here, portions of both the "Rules" and oral orders, which we find, in fact, to be prerequisites of reimbursement payment to the taxpayer as a State Trooper:

(1) The trooper must be on an actual duty shift and must be ten or more miles from (a) his home, and (b) his headquarters or duty station [5] (Conti 13, 15, 23, 25; Wilson, 10–12);

(2) Reimbursement is made only for actual out-of-pocket expense for the purchase of his own meal (Wilson 13; Conti 13, 27);

(3) The restaurant or eating establishment must be one approved by the troop commander, of a public nature, as adjacent to the highway or patrol area as practical, free from an unsavory character (e. g., hangout for hoodlums, etc.), and, whenever possible, not be a restaurant which serves liquor.[6] (Conti, 18, 19, 21, 25; Wilson, 17);

(4) Troopers must notify their troop headquarters of the place where they eat, and the telephone number of that establishment (Wilson, 8, 16; Conti, 18, 19, 21, 26, 28);

(5) Troopers remain on call during meals and are subject to interruptions of an emergency nature (Wilson, 7; Conti, 19, 25);

(6) The limits of reimbursement, without the necessity of receipt verifica-

tion, are: morning meals—$1.00; noon meals—$1.50; and, evening meals—$2.50 [7] (Wilson, 11–12; Conti, 12, 15); and,

(7) Claims for reimbursement are submitted by each individual trooper, by voucher, on a monthly basis, and are then processed (Wilson 10, 13; Conti, 14, 26).

As a final note of clarification, it should be mentioned that no issue of overnight travel expense is here involved and that the New Hampshire State Police do not have barracks which actually serve meals. Wilson, 13–15. There is no requirement that the troopers eat in restaurants, nor are they reimbursed for home-packed meals eaten in the patrol cars. Wilson, 15–16; Conti, 27–29.

## RULINGS

At the outset, the Court wishes to state emphatically that our decision is limited to the issue presented to us: whether the reimbursements received by the taxpayer are excludable from his gross income *under Section 119 of the Internal Revenue Code of 1954.*

We recognize that the armament which the plaintiffs bring to the battle is formidable: four distinguished Circuit Courts of Appeals have ruled in support of the plaintiffs' claim on the precise question presented to us.[8] The detailed analysis accorded by those Courts to the judicial construction of Section 119 has caused us to weigh our own decision very

---

operating under the so-called American plan include meals and lodging in daily rate. (Hotel bills must be attached to expense accounts.)
NOTE: Where nature and location of work or temporary station are such that suitable meals and lodgings cannot be procured, the expense of daily travel required to procure subsistence at the nearest available place will be considered as necessary transportation. Statement of the necessity for daily travel should accompany the travel voucher.

5. See note 4 and accompanying text.

6. The restriction of choice of restaurant to one not serving liquor, at one time an absolute restriction, has been somewhat relaxed in recent years due to the lack

of such qualifying restaurants. Conti, 18–19, 24–25.

7. Occasionally a trooper will be allowed a $5.00 limit for an evening meal under extraordinary circumstances, but he must then provide a receipted bill for reimbursement of the same. Conti, 14, 26. See Rules, *supra* note 4.

8. Those Circuit Courts are the Third, Fifth, Eighth, and Tenth. Saunders v. Commissioner of Internal Revenue, 215 F.2d 768 (3rd Cir. 1954); United States v. Barrett, 321 F.2d 911 (5th Cir. 1963); United States v. Morelan, 356 F.2d 199 (8th Cir. 1966); Keeton v. United States, 383 F.2d 429 (10th Cir. 1967), affirming, per curiam, 256 F.Supp. 576 (D.C.Colo. 1966).

carefully. However, after repeated scrutiny, we find that the statute, the regulations promulgated thereunder, and the legislative history of the 1954 Internal Revenue Code overcome the formidable decisions arrayed on behalf of the plaintiffs and inevitably lead us to an opposite decision.

We frankly admit that the instant fact situation resembles so strictly those four Circuit Court decisions, and so slightly, Magness v. Commissioner of Internal Revenue, 247 F.2d 740 (5th Cir. 1957), the only Circuit Court decision offering the slightest support to the government's position, as to furnish this Court with no substantial case law to support us.[9] This is not recited as an *apologia,* but in fairness to the plaintiffs here and out of respect to the Circuit Courts with whom we reluctantly, but firmly disagree.

■ Section 61(a) of the Internal Revenue Code of 1954 defines gross income as " * * * all income from whatever source derived, including (but not limited to) * * * (1) Compensation for services, including fees, commissions, and similar items; * * * [whereafter follow fourteen additional categories of income]." Section 61(b) cross refers to Sections 71 and following for items specifically included, and Sections 101 and following for items specifically excluded from gross income. The language of Section 61(a) has been construed in a patently broad manner and clearly expresses the intention of Congress to tax all gains except those specifically exempted. The sweeping terms of the 61(a) definition are obvious proof of Congressional intent that the constitutional taxing power be construed comprehensively. See Commissioner of Internal Revenue v. LoBue, 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142 (1956); Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955); Commissioner of Internal Revenue v. Jacobson, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477 (1949); Commissioner of Internal Revenue v. Smith, 324 U.S. 177, 65 S.Ct. 591, 89 L.Ed. 830 (1945), [all construing Section 22(a) of the 1939 Code, the predecessor to Section 61(a)].[10] See Heard v. Commissioner of Internal Revenue, 326 F.2d 962, 966 (8th Cir.), cert. denied, 377 U.S. 978, 84 S.Ct. 1884, 12 L.Ed.2d 746 (1964); Kaiser v. United States, 158 F.Supp. 865 (1958), rev. on other grounds, 262 F.2d 367 (7th Cir. 1958), aff'd, 363 U.S. 299, 80 S.Ct. 1204, 4 L.Ed. 2d 1233 (1960).

■ The Committee Reports on the 1954 Code also make it clear that the Congress intended to exercise its fullest taxing power in Section 61:

Section 61(a) provides that gross income includes "all income from whatever source derived." This definition is based upon the 16th Amendment and the word "income" is used in its constitutional sense. * * * [S]tatutory gross income will continue to include income realized in any form. * * * House Committee Report, Internal Revenue Code of 1954 (H.R. 8300) 3 U.S.C. Cong. & Adm.News, 4017, 4155 (1954).

The Senate Report is of similar, if not identical, import. Senate Finance Committee Report on the Internal Revenue

9. See Hyslope v. Commissioner of Internal Revenue, 21 T.C. 131 (1953). In the light of our opinion that the four Circuit Court decisions cited in footnote 8 were decided incorrectly, and our view that *Magness* and *Hyslope* offer no substantial support for our position, we will attempt neither to distinguish the former nor place reliance upon the latter.

10. The House Report on the Internal Revenue Code of 1954, in its detailed discussion of the bill (H.R. 8300) states explicitly the identical import of Section 61 with Section 22(a) of the 1939 Code:

This section [§ 61(a)] corresponds to section 22(a) of the 1939 Code. While the language in existing section 22(a) has been simplified, the all-inclusive nature of statutory gross income has not been affected thereby. Section 61 (a) is as broad in scope as section 22(a). House Report, Internal Revenue Code of 1954 (H.R. 8300), 3 U.S.C. Cong. & Adm.News 4017, 4155 (1954).

Code of 1954 (H.R. 8300) 3 U.S.C.Cong. & Adm.News (1954) at pages 402–403.

The taxpayer contends that the payments he received, under the factual circumstances noted above, are excluded from the Section 61(a) definition by virtue of Section 119 which provides in pertinent part:

> [That] there shall be excluded from gross income of an employee the value of any meals * * * furnished to him by his employer for the convenience of the employer, but only if * * * the meals are furnished on the business premises of the employer, * * *. I.R.C. of 1954, 26 U.S.C. § 119.

While it must be conceded that any citation in the area of tax law frequently leads to a confrontation with an "Alice-in-Wonderland" interpretation of words and phrases, we simply cannot torture the words "value," "meals," and "business premises" into the mold suggested by the plaintiffs here. The taxpayer would have us read "value of" as equivalent to "cost of;" "meals * * * furnished" as "reimbursed monies for meals purchased;" and, "business premises" as "virtually any privately-owned and operated restaurant in the State of New Hampshire."

First, as to the distinction between "value of" and "cost of," we note the unfortunate fact that "value" and "cost" are, at times, used interchangeably. However, the statute says *"the value of"* and we feel that it is not only reasonable, but mandatory, that the Court consider this language as positive support for the *argument that food itself*, as distinguished from money reimbursement, is the "gain" to which Section 119 is aimed. This conclusion, of course, leads directly to a consideration of the "in kind" requirement postulated in the Treasury Regulations on Income Tax

(1954 Code), and the legislative history of Section 119.

The plaintiffs argue that the cash equivalent is a valid substitution for meals furnished "in kind," and, indeed, four Circuit Courts agree with their interpretation. We must, however, insist that there is more than a mere metaphysical distinction between the commodity *cash* and the commodity *actual foods prepared for consumption.*[11] We frankly admit that the inclusion of the phrase "in kind" in Section 119 would have served to eliminate much controversy in the application of the rule, yet the "in kind" requirement is explicit in the regulations:

> * * * * * *
>
> (2) The exclusion provided by section 119 applies only to meals and lodging *furnished in kind* by an employer to his employee. * * * 26 C.F.R. § 1.119–1(c) (2). [Emphasis added.]

And Treasury Regulations must be sustained unless they are unreasonable and plainly inconsistent with the revenue statute which they implement. United States v. Correll, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967); Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948). We find nothing unreasonable in the applicable regulations nor do we find them in any way inconsistent with the statute. Our opinion is further buttressed by the explicit language in the legislative history that Section 119 " * * * applies only to meals or lodgings furnished in kind."[12] Since we consider legislative history vital as a directive in the construction of internal-revenue law, the burden of overcoming the "in kind" test seems insuperable to the instant plaintiffs.

Yet, aside from the "in kind" requirement, Section 119 provides that meals

---

11. Noteworthy in this regard is the clear recognition by the Supreme Court that "any rule in this area [traveling expense deduction under section 162(a) (2) of the 1954 Code] must make some rather arbitrary distinctions, * * *."

United States v. Correll, 389 U.S. 299, 303, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967).

12. 3 U.S.C. Cong. & Adm.News, supra note 10, at 4175, 4825 [House and Senate Committee Reports].

furnished by the employer are excludable from the employee's income *"only if"* the "meals are furnished on the business premises of the employer." Here, the taxpayer ate one of his three daily meals while on duty at restaurants on, or adjacent to, the highway area he patrolled. These meals were eaten at privately-owned and operated restaurants—business premises of the restaurant owner—not the business premises of the State of New Hampshire. He entered the premises to eat—not to patrol.

 The plaintiffs argue strenuously that the business premises of the New Hampshire State Troopers exist all over the State of New Hampshire.[13] With respect to this argument, we note the *per curiam* acceptance by the First Circuit Court of the concurring opinion of Raum, J., in Dole v. Commissioner of Internal Revenue, 351 F.2d 308 (1st Cir.), 43 T.C. 697, 707 (1965). That Tax Court decision involved the construction of "on the business premises" with respect to the lodgings provision of Section 119:

> The statute [Section 119] does not say "at some convenient or reasonably accessible" place; it does not say "in any nearby building" owned by the employer. It says "on the business premises" of the employer. These words mean what they say and should not be given any strained or eccentric interpretation so as to frustrate what the Legislature obviously tried to achieve. Dole v. C. I. R., 43 T.C. 697, 708 (1965).

We are not called upon to define the "business premises" of the Division of State Police of the State of New Hampshire. We rule that the privately-owned and operated restaurants where troopers eat their meals are not business premises of the State of New Hampshire, and for that reason, meals consumed by troopers thereon, are not consumed "on the business premises of the employer." To hold otherwise would constitute a semantic perversion of Legislative intent.

 Our decision is, therefore, that the payments received by the taxpayer as reimbursed expenses for meals purchased by him while on duty were properly included in his income for 1965, and we rule that the deficiency assessed by the District Director was lawful and in accordance with the Internal Revenue Code of 1954.

Judgment for the defendant.

---

13. We must note our direct rejection of the Fifth Circuit view on this mattter. See United States v. Barrett, 321 F.2d 911, 912 (5th Cir. 1963). See also United States v. Morelan, supra 356 F.2d 199, note 5 at 201, citing as supporting authority, the *Barrett* decision.